Commonwealth, Appellant, *v.* McCoy et al.

Argued March 23, 1970. Before WRIGHT, P. J., WAT-
KINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and
CERCONE, JJ.

*Stephen B. Harris,* Assistant District Attorney, with him *Ward F. Clark,* District Attorney, for Commonwealth, appellant.

*Richard J. Molish, Stephen I. Weiss,* and *Weiss, Nelson & Moskowitz,* for appellee.

*S. Richard Klinges, III,* for appellee.

OPINION BY SPAULDING, J., June 11, 1970:

On July 29, 1967, Donald Palace received a telephone call threatening that Palace would be killed if he did not pay the caller. Before a second call was received Palace informed the police of the first call and had an amplifier-recorder set up to overhear the conversation. The device was held next to the earpiece of the phone so that the receiver could still hear. There was no physical connection between the telephone and the equipment. The caller was not advised that the conversation was being overheard and recorded. As a result of the information recorded that day and the next, appellees, William McCoy and Kenneth Papz-

sycki, were arrested on July 30, 1967, and charged with blackmail, extortion, misuse of the telephone, and conspiracy. Following a suppression hearing, Judge SAT-TERTHWAITE of the Bucks County Court of Common Pleas, Criminal Division, issued an order January 9, 1970, suppressing all evidence of the overheard conversations. The Commonwealth appeals from that order.

The court below determined that the Fourth Amendment provisions concerning illegal search and seizure did not apply; and that the case was controlled by Pennsylvania statute,* Act of July 16, 1957, P. L. 956 §1, 18 P.S. §3742.

The statute reads in relevant part: "No person shall intercept a communication by telephone or telegraph without permission of the parties to such communication. No person shall install or employ any device for overhearing or recording communications passing through a telephone or telegraph line with intent to intercept a communication in violation of this act. No person shall divulge or use the contents or purport of a communication intercepted in violation of this act. . . . The term (divulge) includes divulgence to a fellow employe or official in government or private enterprise or in a judicial, administrative, legislative or other proceeding. Except as proof in a suit or prosecution for a violation of this act, no evidence obtained as a result of an unlawful interception shall be admissible in any such proceeding."

*Commonwealth v. Murray*, 423 Pa. 37, 223 A. 2d 102 (1966), reversing 206 Pa. Superior Ct. 298, 213 A. 2d 162 (1965), most recently interpreted that language. In that case private detectives heard an at-

---

* The leading federal authority in this area, *Katz v. United States*, 389 U.S. 347 (1967), is not retroactive beyond December 18, 1967. *Desist v. United States*, 394 U.S. 244 (1969).

tempted bribery by tapping the switchboard of the victim's company, and by listening on telephone extensions to the bribery attempt. The Court held that listening by use of those devices constituted an unlawful interception under the statute. *But see,* with respect to telephone extensions, *Rathbun v. United States,* 355 U.S. 107 (1957). Both the majority and concurring opinions reasoned that an interception occurs whenever a third party overhears a telephone conversation, unless both parties to the conversation are aware of and consent to the third party's presence. We do not believe that the legislature intended such a broad meaning be given the word "intercept."

The Court in *Murray* first addressed itself to the question of bilateral consent, and finding none, concluded that there had of necessity been an unlawful interception. In our view, the operative word in the statute is interception, and there must be a showing of an interception before the issue of consent may be reached.

The *Murray* decision, in its general language, condemning all overheard conversations not consented to by both of the parties did not consider the specific factual context of the instant case. In that case the telephone tap and the extension phones were connected to the lines carrying the communication, and the communication was heard by the third persons either at the same instant or before the intended receiver. Justice MUSMANNO, speaking for the Court, emphasized that the interception was at a point before the message reached the receiver, stating: "It is clear from the record that the telephone line was tapped at a point before the line reached Haas's telephone instrument." 423 Pa. at 41. In the instant case, the amplifier-recorder was in no way attached to the telephone equipment, and the intended receiver heard the message before the third persons. Our case parallels the instances

where those in the room with the one called hear all the conversation because the caller speaks loudly in the phone; and the situation where the person called repeats the message for the benefit of others in the room. When the communication has to come out of the receiver before third persons can hear the conversation, we find an overhearing, but not an interception under the Act.

Our position is supported in the Supreme Court interpretation of §605 of the Federal Communications Act (the federal anti-wiretap statute). In *Goldman v. United States,* 316 U.S. 129, 134 (1942), the Court found the word intercept to mean: ". . . this word [intercept] indicates the taking or seizure by the way or before the arrival at the destined place. It does not ordinarily connote the obtaining of what is to be sent before, or at the moment it leaves the possession of the proposed sender, or after, or at the moment, it comes into the possession of the intended receiver. The listening in the next room to the words of Shulman as he talked into the telephone receiver was no more the interception of a wire communication, within the meaning of the Act, than would have been the overhearing of the conversation by one sitting in the same room."

The distinction may be more conceptual than "real world" because the speed of sound and the distances involved make it difficult to determine when the message actually comes into the possession of the receiver. Nevertheless, we find the difference a valid one. The Pennsylvania Legislature had to be aware of that language, distinguishing overhearing from intercepting, when it enacted the anti-wiretap statute in 1957. In light of that, we cannot agree that no importance should be attached to the fact that the Pennsylvania Legislature chose the word intercept. 423 Pa. at 58. Accordingly, we find no interception within the meaning of the Pennsylvania statute, and the question whether one

or both of the parties must consent to third persons hearing the conversation is not relevant to the disposition of this case.

The order of the court below is reversed insofar as it suppressed evidence of the conversations between Palace and appellees.

---

DISSENTING OPINION BY HOFFMAN, J.:

Judge SPAULDING has well stated the facts of the case. The question presented by these facts is: May a person other than the receiver testify as to the contents of a phone call, if he has heard the phone call by means of an amplification device without the consent of the caller?*

The answer to this question is governed by the Act of July 16, 1957, P. L. 956, §1, 18 P.S. §3742 (Supp. 1970) [formerly, 15 P.S. §2443]. The first two sentences of the Act are crucial. "No person shall intercept a communication by telephone or telegraph without permission of the parties to such communication. No person shall install or employ any device for overhearing or recording communications passing through a telephone or telegraph line with intent to intercept a communication in violation of this act." Plainly read, the second sentence prohibits *installing or employing* a device with the intent to intercept a communication. This sentence, therefore, prohibits the installation or use of devices regardless of whether a communication is, in fact, intercepted. In contrast, the first sentence prohibits actual interception and makes no reference to the use of a device. It is written in general language, with its entire emphasis placed upon gaining access to communications without the consent

---

* Tape recordings were also made of the phone calls in question. Their status is governed by the same rationale as the amplification device.

of both parties. The question, therefore, is whether the legislature, in thus referring to interceptions, without making reference to the means employed, intended to confine the prohibition only to physical intrusions upon the line of communication or, rather, it intended a broader result, that being the protection of the privacy of personal communications. In my opinion, the language most reasonably comports with the latter.

This conclusion is in accord with the general aims of the Act. The Act makes communications by telephone or telegraph a protected interest which can be waived only by the consent of both parties to the communication. The legislature's desire to insulate communication is evident from the requirement that both parties consent rather than just one. Were just one party's consent necessary, then we might conclude that the legislature intended to protect one only from uninvited strangers. A two-party consent requirement, however, indicates an intention to keep out all strangers, invited as well as uninvited. If the majority are correct, this Court will permit anyone to overhear as long as it is done without breaking into the line of communication. Thus, one party, without the consent of the other, could hold amplification equipment to the phone and broadcast the other party's voice to whomever he wished with impunity. Or a stranger, without the consent of either party, could hold sophisticated amplification equipment to a wall or to a phone booth and listen to a communication with impunity. Such a result would circumvent the intent of the Act. It would determine an individual's right to privacy on the scheme employed by the interceptor rather than on the scope of the right itself.

My reading of the Act is supported by the decision of the Supreme Court in *Commonwealth v. Murray*, 423 Pa. 37, 223 A. 2d 102 (1966). Although there was no one opinion representing the view of a majority of the

Court, two opinions representing the views of four justices enunciate the rationale this Court must follow. Both opinions faced the question whether overhearing a communication by means of an extension telephone, without the consent of both parties, was a violation of the Act.

Justice MUSMANNO, writing for THE CHIEF JUSTICE and himself, wrote: "Both the lower court and the Superior Court stated in their respective opinions, and the Commonwealth equally contends, that there is nothing illegal about someone listening in on a telephone extension, without the consent of the parties conversing on that wire, and then divulging the contents of that conversation to others. This position demonstrates another misreading of the Act. The Act declares in a no-nonsense fashion that 'No person shall install or employ any device for overhearing, or recording communications passing through a telephone or telegraph line with intent to intercept a communication in violation of this act.' What is a telephone but a device for overhearing? * * * What the prosecution throughout this entire case fails to perceive is that the Act of 1957 has one precise purpose and that is to punish those who intercept telephone communications *without the consent of both parties.* * * * Certainly the Commonwealth would not argue that if an interloper clandestinely installed a telephone extension to a private telephone and listened in on all conversations, he would be free from prosecution. Why would that situation change because the interloper happened to be a paid detective? He, the same as anyone else, must have the consent of both parties to a telephone conversation before he may, under the Act, listen into, and thus intercept, that conversation." Id. at 46-47, 223 A. 2d at 107-108 [original emphasis].

Justice ROBERTS, writing for Justice O'BRIEN and himself, wrote: "[T]here is no reason for concluding

. . . that while the Legislature clearly valued individual privacy more highly than the right to tap wires without permission, it nonetheless valued individual privacy less than the right to overhear conversations by an extension phone without permission. Indeed I am at a complete loss to imagine what purpose is served by a statute, which at the outset requires permission of more than one of the parties to 'interception' of a telephone conversation, if by the simple expedient of resorting to listening in on an extension telephone, the needed permission of one of the parties is completely dispensed with." Id. at 58-59, 223 A. 2d at 113.

The rationale of both opinions is that telephone and telegraph communication is protected and that it is not to be intruded upon by any method. Neither opinion in its discussion of an extension, relies upon the fact that an extension is connected to the line of communication. They both mandate, in the words of Justice ROBERTS, that no "simple expedient" be allowed to circumvent the policy of the Act.

In summary, without specific direction from the legislature, I cannot agree that overhearing accomplished through an amplification device is exempted from the Act's prohibition. This Court's opinion would allow such an exemption by a rationalization which does not comport with the intent of the Act. The Act clearly intends to protect the privacy of communications. Such privacy can be invaded only if both parties relinquish their privilege to communicate in confidentiality. I cannot agree that this Court can legislate away what the General Assembly has clearly mandated for the protection of our citizenry. Nor can we, as the majority suggest, substitute our interpretation of the legislature's intent in place of the Supreme Court's interpretation in *Murray*.

I would affirm the order of the lower court.