398 A.2d 718

COMMONWEALTH of Pennsylvania

v.

Robert POLI, Appellant.

Superior Court of Pennsylvania.

Submitted Sept. 15, 1978.

Decided March 2, 1979.

Gerald Jay Pomerantz, Philadelphia, for appellant.

Eric J. Cox, Assistant District Attorney, Chief, Appeals Division, Norristown, for Commonwealth, appellee.

Before PRICE, HESTER and HOFFMAN, JJ.

HESTER, Judge:

Appellant was convicted of criminal attempt, criminal conspiracy and terroristic threats. Post verdict motions were denied and a jail sentence of 2½ to 7 years was imposed.

The facts underlying this conviction are as follows:

On February 13, 1977, the home of Mr. and Mrs. Ralph Spagnolia was burglarized. On February 17, Mrs. Spagnolia received a telephone call from an unidentified person asserting that he had certain information concerning the burglary and unless she produced $10,000, harm would come to her. Immediately thereafter, Mrs. Spagnolia notified the Abington police of the details of the conversation. The police urged her to continue to receive information from the caller and to comply with his wishes; the police would arrange a stakeout of her home and furnish the requested money.

On February 23, 1977, the caller arranged for a rendezvous. Mrs. Spagnolia would proceed to the Howard Johnson's restaurant in Glenside and await further instructions from a public telephone.

While this was in progress, an officer on stakeout duty observed a blue and white Cadillac follow Mrs. Spagnolia as she drove from her house. The officer followed the Cadillac to Howard Johnson's, where it stopped approximately 300 yards from the restaurant. At this point, the officer copied the number on the license plate.

Via public phone, Mrs. Spagnolia was instructed, by the same individual who had previously conversed with her, to proceed to Littleton's Diner. This she did and again the blue and white Cadillac was observed following her.

4

From the Diner, Mrs. Spagnolia was instructed to proceed to a "54.9" sign on Cheltenham Avenue. The Cadillac again followed as Mrs. Spagnolia drove to this area. When she arrived at the sign and got out of the car an individual later identified as George Smith, called to her from an overpass above Cheltenham Avenue. He then lowered a rope with a hook on the end whereupon she placed the bag with the money in it on the hook. The man on the overpass then fled. The Cadillac was stopped by the police and the appellant, the operator of the car, was placed under arrest. The car was owned by appellant's girlfriend, Josephine Mazer.

A short time later, Ms. Mazer was observed talking to George Smith in a restaurant in Abington Township. The police then arranged a photographic display and Mrs. Spagnolia identified Smith from the display as the man on the overpass, whereupon he was arrested.

Appellant's allegation of error concerns the following testimony elicited from Mrs. Spagnolia by the District Attorney:

BY MRS. HAGARTY: (The Prosecutor)

Q Did you know Mr. Poli (the appellant) at that time?

A No, I did not.

Q Did you know of him, Mrs. Spagnolia?

A No.

MR. POMERANTZ: I would object to this line of questioning, Your Honor. Without a proper foundation being laid.

THE COURT: Well, I don't know what foundation there could be for whether or not she knew the defendant.

MR. POMERANTZ: She said she didn't know him and then there was some additional questions whether she knew him.

MRS. HAGARTY: I ask whether she knew of him.

MR. POMERANTZ: Your Honor, I don't think there is any relevancy in whether she knew of him. It has no relevancy to the bearing of this case.

THE COURT: There may or may not be. I think it's a proper question. I'll permit it.

BY MRS. HAGARTY:

Q Did you know of him?

A I did not.

Q After that day, did you know of the defendant?

A Yes.

MR. POMERANTZ: Your Honor, I think that—I can't see the relevancy of the question whether she knew of the defendant after that day. Obviously she knew of the defendant at that point because they told her Poli was arrested. And for any other purpose.

THE COURT: I suppose the real question is whether or not she knows now if there was some relationship between her and him previous to this incident.

MRS. HAGARTY: That's the question I'm getting at, Your Honor.

MR. POMERANTZ: Very well.

BY MRS. HAGARTY:

Q Mrs. Spagnolia, do you know now of any relationship between you and this defendant?

A I know who he is now. I knew his father and his brother.

Q And what's his father's name?

A Ricky.

Q And how did you know his father?

A He used to work for my husband.

Q Did you know him yourself?

A Yes, I did.

Q Where had you seen him?

A In the taproom where he worked.

MR. POMERANTZ: I would object to the question, the form of the question, Your Honor, as to who "him" is.

THE COURT: Well, supposing you identify "him".

MRS. HAGARTY: The father, Ricky Poli.

THE WITNESS: Ricky Poli.

BY MRS. HAGARTY:

Q Where had you seen him?

A In the taproom that he worked for my husband.

Q When was the last time you had seen Ricky Poli in that taproom?

MR. POMERANTZ: Your Honor, I have a continuing objection, without further foundation and move to strike all the testimony unless there can be some showing that there is in fact a causal link between the knowledge. We don't know how this lady knows and from what source, she has not given it, the District Attorney hasn't asked her that and the inference would now be that it is in fact Ricky Poli, this man's father, which there is no proof of before this courtroom. And which the jury is going to take an inference of without proof. And I think all of this testimony is irrelevant to this case.

THE COURT: All right. Supposing you develop how this witness knows what she has just testified to.

BY MRS. HAGARTY:

Q Mrs. Spagnolia, how do you know that Ricky Poli is this defendant's father?

A One of the policeman over in Abington—

MR. POMERANTZ: Objection, Your Honor. I would therefore move that all of the testimony that has been given be stricken.

(N.T. pgs. 44–48)

After this, appellant's counsel, at side bar, moved for a mistrial, stating that this same testimony had come up at the preliminary hearing and the same objection was made. The District Attorney, however, assured the court that this testimony would be verified by someone who knew the information firsthand.

However, this "rehabilitating witness" was never produced by the Commonwealth. Therefore, after the Commonwealth rested, the defense again moved for a mistrial. The District Attorney explained her failure to produce any witness with this firsthand knowledge by stating that the witness she thought could substantiate Mrs. Spagnolia's testimony also learned it from somebody else.

The court, however, denied the motion for a mistrial, stating that in its opinion there was no prejudice.

Clearly, this testimony should not have been presented to the jury; it was "hearsay" evidence and therefore not admissible.

Having established that there was error in the trial, we must now determine whether that error was "harmless".

"Harmless" error is one which could not have contributed to the verdict. *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1977); *Commonwealth v. Davis*, 452 Pa. 171, 305 A.2d 715 (1973). *Story* requires that a court be convinced beyond a "reasonable doubt" that the error did not contribute to the verdict.

The Commonwealth concedes error in this case but asserts that the "tainted" evidence was not prejudicial but merely "de minimus" and thus appellant should not be granted a new trial.

In support of this assertion, the Commonwealth points to five essential facts which it proved:

1. Appellant was observed by the police stakeout at every rendezvous point, following Mrs. Spagnolia as she traveled.

2. When police stopped and arrested appellant, he was only a short distance from where the pickup had been made.

3. The blue and white Cadillac driven by appellant that day belonged to his girlfriend, Josephine Mazer, who was subsequently observed talking with George Smith, later identified by the victim as the "pick-up" man.

4. Appellant testified that he knew George Smith.

5. In two of the telephone conversations between the victim and the caller, the caller indicated he had a partner.

These established facts, plus the inferences to be drawn therefrom, were sufficient to allow the jury to find the appellant guilty.

We agree with the Commonwealth that the evidence adduced was clearly sufficient to support conviction of the crimes charged. However, review here is not to determine sufficiency of the evidence. We focus only on whether the hearsay testimony had any effect on the subsequent verdict.

8

As to this, the Commonwealth merely asserts that the testimony related only to appellant's father and not him and that the testimony was actually non-essential to the Commonwealth's case.

Appellant argues that whether or not it was non-essential, clearly it was most prejudicial. The testimony, appellant continues, surely tended to create an inference that appellant knew the victim had money, had some knowledge of their activities and place of residence and possibly had some motive because his father formerly worked for the victims and while this type of evidence normally is very relevant and persuasive, here it was not proper in absence of a proper witness. Thus, its entry into the case surely had an affect on the jury.

Using the test enunciated above, we cannot say "beyond a reasonable doubt" that this testimony had no effect on the jury verdict. Clearly, the error was not "de minimus". It neither was "cumulative evidence" nor did it relate to facts already proven. *Commonwealth v. Rodger,* 472 Pa. 425, 372 A.2d 771 (1977). Also, we did not find it in any way to be insignificant. *Commonwealth v. Hale,* 467 Pa. 293, 356 A.2d 756 (1976).

Appellant was convicted on purely circumstantial evidence. That is not to say that we are suspicious of that type of evidence. Indeed in most instances, it proves more trustworthy than direct. However, we believe that the Commonwealth's evidence in this case was clearly dependent on a thin circumstantial line. Thus our inability to conclude that this testimony had no effect on the verdict.[1]

Judgment of sentence reversed. New trial granted.

PRICE, J., dissents.

1. The Commonwealth also asserts that this issue has been waived by the failure of appellant to request a remedial instruction at the close of trial. We find no merit to this, since appellant had twice previously met with no success in requesting cautionary instructions on the same point.