422 A.2d 838

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**David Harry BALDWIN.**

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Susan Anne NEIDIG.**

Superior Court of Pennsylvania.

Argued June 14, 1979.

Filed Oct. 17, 1980.

Petition for Allowance of Appeal Denied March 16, 1981.

Edward F. Browne, Jr., Assistant District Attorney, Lancaster, for Commonwealth, appellant.

Samuel M. Mecum, Lancaster, for appellees.

Before SPAETH, STRANAHAN and SUGERMAN, JJ.*

SUGERMAN, Judge:

Appellees were arrested following a search of their apartment with a warrant, and charged with possession of marijuana with intent to deliver, a violation of the Controlled Substance, Drug, Device and Cosmetic Act.[1]  Pre–trial suppression motions were denied and Appellees, tried jointly, were convicted by a jury.

Post trial motions were filed by both Appellees, setting forth eight asserted errors as the bases for relief.  Following

* President Judge JOHN Q. STRANAHAN of the Court of Common Pleas of Mercer County, Pennsylvania, and Judge LEONARD SUGERMAN of the Court of Common Pleas of Chester County, Pennsylvania, are sitting by designation.

1.  Act of April 14, 1972, P.L. 233, No. 64, § 13, as amended;  35 P.S. § 780–113(a)(30).

argument, the trial judge, sitting as a court en banc, on January 11, 1977, granted Appellees' motions for new trials, and by the same order, suppressed all evidence seized pursuant to the warrant on the ground that the affidavit for the search warrant failed to establish a reasonable basis for a nighttime search. Pa.R.Crim.P. 2003(c). The court failed to rule on the remaining issues raised in the post trial motions.

The Commonwealth appealed to this court and we reversed, reinstated the verdicts and remanded for sentencing. *Commonwealth v. Baldwin and Neidig*, 253 Pa.Super. 1, 384 A.2d 945 (1978).

Appellees thereupon filed a petition for allowance of appeal with the Supreme Court of Pennsylvania. On September 21, 1978, the Supreme Court granted the petition and remanded the cases to the lower court for consideration of the remaining issues raised in Appellees' post trial motions.

Following remand, the lower court, on October 30, 1978, determined that the affidavit supporting the search warrant was based upon an unlawful telephone eavesdrop,[2] again suppressed all evidence seized pursuant to the warrant, and again granted Appellees new trials. The lower court once again failed to reach or rule upon the remaining issues raised in the post-verdict motions.

**2.** Paragraph 5 of Appellees' post–trial motions sets forth the following:
> "5. The trial judge erred in allowing into evidence marijuana and drug 'paraphernalia' which were obtained as a result of an illegal arrest."

We note that Appellees' arrests occurred *after* the search, and that the evidence seized was not obtained as the result of the arrest. We also note that although the issue is specifically raised in Appellees' pretrial application to suppress, Appellees did not assert in their post–verdict motions that the suppression court erred when it failed to suppress evidence obtained pursuant to a search warrant based upon an unlawful telephone intercept. As the suppression court's ruling on the issue was not specifically challenged in Appellees' post–trial motions, we would in the usual case find that the lower court improvidently reached the issue post trial. Pa.R.Crim.P. 1123(a); *Commonwealth v. Dewitt*, 271 Pa.Super. 156, 412 A.2d 623 (1979). However, the lower court's order also suppresses the Commonwealth's evidence and we consider the issue. See note 3, infra.

■ The Commonwealth has appealed from the order of the lower court suppressing the evidence seized pursuant to the search warrant and granting Appellees new trials.[3]

Before we turn to the merits, however, we must dispose of a question of our jurisdiction to consider the subject matter of this appeal, raised in Appellees' brief.

As earlier observed, Appellees appealed our decision in *Commonwealth v. Baldwin and Neidig*, supra, finding the nighttime search of Appellees' residence valid, by filing a petition for allowance of appeal in the Supreme Court of Pennsylvania pursuant to 42 Pa.C.S. § 724(a) and Pa. R.A.P. 1112, et seq. That court granted Appellees' petition, and remanded the case to the Court of Common Pleas of Lancaster County "for consideration of remaining issues raised by the post–verdict motions..." Appellees' Brief at 13. As also noted, the Court of Common Pleas of Lancaster County, acting upon the remand, considered the issue now before us in this appeal and entered its order.

The Commonwealth thereupon appealed from the entry of that order to this court, and both the Commonwealth and Appellees then twice filed applications with this court and the Supreme Court to transfer the instant appeal to the Supreme Court. Both courts refused the applications to transfer.

Citing Pa. R.A.P. 1701(a), Appellees now contend that as the appeal from our earlier decision is yet pending in the Supreme Court, this court may no longer proceed in the matter. As Appellees correctly note, Pa. R.A.P. 1701(a) provides the following:

"Rule 1701. Effect of appeal generally.

(a) General Rule.–Except as otherwise prescribed by these rules, after an appeal is taken or a petition for allowance of appeal is filed in a matter or review of a

---

3. The Commonwealth has asserted that the order of the lower court suppresses all its physical evidence and results in the termination of the instant prosecutions. In such circumstances, the Commonwealth's appeal is properly before us. *Commonwealth v. Liddick*, 471 Pa. 523, 370 A.2d 729 (1977); *Commonwealth v. Wheatley*, 266 Pa.Super. 1, 402 A.2d 1047 (1979).

quasijudicial order is sought, the lower court or other government unit may no longer proceed further in the matter."

It is this section of the rule, Appellees argue, that prohibits our consideration of the matter before us. Appellees' research, however, does not run the full course. Pa. R.A.P. 1701(c) provides:

"(c) Limited to matters in dispute.—Where only a particular item, claim or assessment adjudged in the matter is involved in an appeal, or in a petition for review proceeding relating to a quasijudicial order, the appeal or petition for review proceeding shall operate to prevent the lower court or other government unit from proceeding further with only such item, claim or assessment, unless otherwise ordered by the lower court."

■ It is at once obvious that the question before us in the instant appeal is unrelated to the issue presently pending in the Supreme Court. The matter we now confront is properly before us and within our jurisdiction, 42 Pa.C.S. § 742, and we will reach the merits.

I

The single issue we must resolve in the appeal before us is whether the physical evidence introduced by the Commonwealth at Appellees' trials was admitted in violation of Pennsylvania's Anti–wiretap Statute.[4] Before we embark upon our task, however, it is necessary that we set forth the facts necessary to our disposition.[5]

On January 31, 1976, a confidential informant, later identified as one John C. Thompson, a Lancaster County attorney, telephoned the Pennsylvania State Police and informed Trooper George Taylor that he overheard three telephone conversations between his son, John Earl Thompson, a juve-

4. Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. §§ 5701, et seq. (Repealed) See note 7, infra.

5. A complete recitation of the facts is found in our earlier opinion in *Commonwealth v. Baldwin,* supra, 253 Pa.Super. at 4, 384 A.2d at 947.

nile, and Appellee David Baldwin, concerning a prospective sale of marijuana by Baldwin to the younger Thompson.

Mr. Thompson told Trooper Taylor that Baldwin, in the most recent of the conversations, told Thompson's son that he had possession of four pounds of marijuana, some of which he wanted to sell to young Thompson. The elder Thompson also told Trooper Taylor that the sale by Appellee Baldwin to his son was apparently to take place at Baldwin's residence at approximately 8:00 p. m. that evening. Mr. Thompson then fully described his son's appearance to Trooper Taylor.

Acting upon this information, Trooper Taylor and a fellow officer commenced surveillance of the Baldwin residence. At approximately 8:15 p. m., an automobile arrived and a juvenile answering Mr. Thompson's description of his son alighted from the vehicle and entered the residence. A few moments later, young Thompson emerged, carrying a brown paper bag, entered the vehicle and was driven away. The officers followed and stopped the automobile near the Baldwin residence. The driver consented to a search of the vehicle and the officers discovered the brown paper bag containing approximately one pound of marijuana.

Trooper Taylor thereupon proceeded to the office of a district justice and related the foregoing information in an affidavit for a search warrant to search Baldwin's residence. The magistrate issued the warrant and it was executed at the Baldwin residence shortly thereafter. The search yielded nearly 11 pounds of marijuana.

Baldwin and his co–lessee, Appellee–Neidig were thereupon charged with possession with intent to deliver a controlled substance. Pre–trial suppression motions to suppress the marijuana were denied, and Appellees were found guilty by a jury. The marijuana was admitted into evidence at the joint trial.

As earlier observed, following argument upon Appellees' post–trial motions, the court en banc reversed the suppression court's ruling, ordered the marijuana suppressed, and granted Appellees new trials.

The facts developed at the pre–trial suppression hearing, and a pre–trial hearing convened upon Appellees' petition for Disclosure of Informant reveal, and the lower court properly found that young Thompson resided with his parents; that the elder Thompson was listed as the subscriber to the telephone at the dwelling; that in addition to the principal telephone, two extension telephones were installed in the house; that two such telephones were located on the first floor and the third telephone on the second floor of the dwelling; that the telephone conversations between young Thompson and Appellee Baldwin relating to the sale of marijuana, as reported by Mr. Thompson to Trooper Taylor, were initiated by young Thompson, from the telephone on the second floor; and that in order to avoid being overheard, young Thompson took the telephone into a second floor bathroom, closed the door, and then called Baldwin.

The elder Thompson did not testify at any proceeding below but the parties agree and the lower court again properly found that Mr. Thompson overheard the conversation between Baldwin and his son by listening to it on one of the two extension telephones located on the first floor of the house. The parties also agree, the lower court found, and there is no doubt that the marijuana was obtained by the police in the search of Appellee Baldwin's residence as the direct result of Mr. Thompson's report to the police of the contents of the telephone conversation between young Thompson and Appellee Baldwin.

On the date Mr. Thompson overheard and reported upon the telephone conversation, between his son and Appellee Baldwin, and at the time of trial, the pertinent Anti–wiretap Statute in effect in Pennsylvania was contained in the Crimes Code.[6] Those sections which concern us follow:

**6.** Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. §§ 5701, et seq., repealed by the Act of October 4, 1978, P.L. 831, No. 164, § 1, 18 Pa.C.S. §§ 5701, et seq., known as the "Wiretapping and Electronic Surveillance Control Act," effective in sixty days. Prior to repeal, §§ 5701, 5703 and 5704 of the Act of December 6, 1972, were amended by the Act of December 27, 1974, P.L. 1007, No. 327, §§ 2, 3; and § 5702 of the Act of December 6, 1972, was amended by the

"§ 5701.  Definitions.

.   .   .   .   .

'Person.'  Includes persons acting or purporting to act for, or in behalf of, any government or subdivision thereof, whether Federal, State, or local.
. . ."

"§ 5702.  Breach of privacy of telephone or telegraph communications.

A person commits a misdemeanor of the second degree if he:

(a) Offense defined.–

(1) intercepts without permission of the parties to the communication a message or other communication by telephone or telegraph;
. . ."

"§ 5703.  Admissibility in evidence.

Except as proof in a suit or prosecution for a violation of this chapter, no evidence obtained as a result of a violation of privacy or breach of privacy of messages shall be admissible as evidence in any legal proceeding."

Appellees contended below and argue here, and the lower court agreed that by listening on an extension telephone to his son's conversation with Appellee Baldwin, Mr. Thompson violated Section 5702(a)(1), in that he intercepted a communication by telephone without permission of the parties.

We must then first address the question of whether Mr. Thompson's conduct violated the statute.  The Commonwealth's brief impliedly concedes that it did, and we agree.

Section 5702(1) provides quite simply that one who intercepts a telephone communication without the permission of the parties to that communication is guilty of a misdemeanor.  Two elements must facially be satisfied in order to establish a violation of Section 5702(1): (1) interception of a

Act of June 27, 1973, P.L. 69, No. 29, § 1 and the Act of April 7, 1976, P.L. 69, No. 30, § 1.  In addition, the Act of December 27, 1974, P.L. 1007, No. 327, § 4 added a new section to 18 Pa.C.S. § 5701, et seq. numbered § 5705, and set forth in part in the text above.

telephone communication, (2) without the permission of the parties.

■ It is clear from the record that Mr. Thompson did not have the permission of either Appellee Baldwin or his son to listen to the conversation. It is now equally clear that when one listens to or overhears a telephone conversation between two persons by the use of an extension telephone, such person "intercepts" that conversation.

■ Addressing the identical issue in *Commonwealth v. Murray*, 423 Pa. 37, 223 A.2d 102 (1966), Justice Musmano, writing for a plurality of the Supreme Court said cogently:[7]

"We will now consider another phase of this appeal. Both the lower court and the Superior Court stated in their respective opinions, and the Commonwealth equally contends, that there is nothing illegal about someone listening in on a telephone extension, without the consent of the parties conversing on that wire, and then divulging the contents of that conversation to others. This position demonstrates another misreading of the Act. The Act declares in a no nonsense fashion that 'No person shall install or employ any device for overhearing or recording communications passing through a telephone or telegraph line with intent to intercept a communication in violation of this act.'

What is a telephone extension but a device for overhearing? The physical properties needed and the labor required to install a telephone extension may be even more extensive than those employed in attaching a wiretap, which is a gadget of sorts. They both lead from the main telephone line, they both lead to the same end result—eavesdropping. Thus, the difference which the Commonwealth, the Superior Court and the court below attempt to draw between a wiretap and a telephone extension cannot be based on any distinction in mechanical complexity between the two operations."

7. *Murray* was concerned with the provisions of the Act of July 16, 1957, P.L. 956, No. 411, § 1, 15 P.S. § 2443. The language of that statute is identical in all material respects to the language of the statute at bar.

It is thus apparent to us that Mr. Thompson violated Section 5702(1). The Commonwealth argues, however, that in *Commonwealth v. Goldberg*, 208 Pa.Super. 513, 224 A.2d 91 (1966) this court articulated an "exception" or "domestic privilege" available to a person in the position of Mr. Thompson as the father of one of the parties to the intercepted communication.

In *Goldberg*, the defendant, subscriber to the telephone in a house he shared with his wife, tapped the telephone in order to listen to conversations between his wife and a suspected paramour. The defendant was subsequently charged with and convicted of violating 15 P.S. § 2443. We reversed and discharged the defendant, quoting extensively from, and virtually resting our decision on *People v. Appelbaum*, 277 App.Div. 43, 97 N.Y.S.2d 807, aff'd 301 N.Y. 738, 95 N.E.2d 410 (1950), an analogous case. Included among our quotations from *Appelbaum* was the following excerpt, upon which the Commonwealth at bar relies:

"A subscriber has an absolute right to record his own communications and to protect the use made of his own telephone. There is an express as well as an implied right to prohibit its use for messages which would damage his business interests, disrupt the family relationship, or destroy amicable social conditions. The act of one having his own wire tapped to vindicate these paramount rights is not within the scope of this statute or the objectives sought to be reached by its enactment. The statute was enacted to protect a telephone subscriber's line from the act of another person; not to safeguard it from his own act."

The Commonwealth contends that the elder Thompson's conduct, as the subscriber to the telephone in question and as the parent of one of the parties to the conversation, fits within the quoted language of *Goldberg*. The Commonwealth's contention misses the mark.

We note first that whatever vitality our decision in *Goldberg* may yet possess, the principle enunciated in *People v. Appelbaum*, supra, upon which *Goldberg* rests, is not the

law of Pennsylvania. Section 5702 of the Crimes Code is derived from and essentially identical to the language contained in the first part of Section 250.12(2)(a) of the Model Penal Code. The latter section does contain two exceptions, however, not adopted in the Crimes Code:

"[250.12]

. . . . .

(2) *Other breach of privacy of messages.* A person commits a misdemeanor if, except as authorized by law, he:

(a) intercepts without the consent of the sender or receiver a message by telephone, telegraph, letter or other means of communicating privately; but this paragraph does not extend to (i) overhearing of messages through a regularly installed instrument on a telephone party line or on an extension, or (ii) interception by the telephone company or subscriber incident to enforcement of regulations limiting use of the facilities or to other normal operation and use . . ."

Notwithstanding these exceptions, the comments to this section of the Model Penal Code are enlightening:

"As to interception by the subscriber, dealt with in subsection (2)(a)(ii), we are taking the position that subscribers may monitor calls on their lines for the purpose, for example, of determining whether forbidden personal or toll calls are being made. A wiretap by the subscriber would not, however be lawful if done for such a purpose as securing evidence against a spouse or employee. Thus the section rejects the results reached in *People v. Appelbaum,* 277 App.Div. 43, 97 N.Y.S.2d 807, aff'd per cur. 301 N.Y. 738, 95 N.E.2d 410 (1950). There the court, construing a statute prohibiting 'unlawful' tapping as applied to a man who had his own phone tapped 'to vindicate his paramount rights in respect of marital status declared . . .' "[8]

**8.** Section 3 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1939, provides:

Although the two exceptions noted were not adopted as part of Section 5702 of the Crimes Code, the Commonwealth would have us engraft one upon the statute, under the guise of judicial interpretation. This we may not do, as the Constitution of Pennsylvania has wisely devolved that function upon the legislature. *Commonwealth v. Bennett*, 245 Pa.Super. 457, 369 A.2d 493 (1976). We find the language of Section 5702 to be quite clear and to admit of no such exception or "domestic privilege" as the Commonwealth would have us construct.[9]

We also observe that in *Goldberg* the defendant was himself the subscriber and the eavesdropper, and the person prosecuted. The case was not concerned with and did not discuss the question of whether the conversations intercepted by the defendant in *Goldberg* were admissible against anyone in a legal proceeding. We are not here called upon to decide whether Mr. Thompson may himself be prosecuted, but rather whether the fruits of his interception may be admitted in evidence against a third party. Thus, the issues are not similar. In sum, we find *Goldberg* unpersuasive upon the issue before us, and we neither find in nor create any such exception to the plain language of Section 5702.

The Commonwealth also argues that whatever our interpretation of Section 5702 may be, the privacy rights protected by that section must yield to the laudatory policy of ferreting out the criminal element that preys upon our society.

> "The comments or report of the commission, committee, association or other entity which drafted a statute may be consulted in the construction or application of the original provisions of the statute if such comments or report were published or otherwise generally available prior to the consideration of the statute by the General Assembly, but the text of the statute shall control in the event of conflict between its text and such comments or report."

The comment we cite was published in 1962 and was obviously available to the General Assembly of Pennsylvania during its consideration of the Crimes Code, ultimately enacted ten years later. Nor do we find a conflict between the comment and the text of section 5702.

**9.** The Crimes Code itself contains a section setting forth rules of construction. See 18 Pa.C.S. § 105.

A similar argument was advanced and rejected in *Commonwealth v. Papszycki*, 442 Pa. 234, 275 A.2d 28 (1971), a case interpreting 15 P.S. § 2443, renumbered 18 P.S. § 3742. In *Papszycki*, one Palace received at his home a series of telephone calls from an unknown caller, advising Palace that the caller had a "contract" to kill Palace, but was willing to "reverse" the contract for the payment of $800. Following the first call, Palace advised the police and while awaiting their arrival, Palace *himself* placed an induction coil around the receiver portion of the telephone handset. The device, although not physically attached or connected to the handset, permitted conversations passing through the receiver to be recorded on tape recorder and simultaneously to be amplified so as to be audible to anyone in the room.

The coil was in operation when the second and subsequent calls were received and the resulting conversations were recorded and also overheard by two police officers as the result of the amplification feature of the induction coil. Ultimately, the calls were traced to the defendant and he was arrested and charged with blackmail and related offenses.

Pre–trial, the lower court granted an application to suppress and ruled inadmissible any of the defendant's conversations heard by Palace, the police, or anyone else, if such persons "did not personally hear directly through the telephone receiver itself, as the immediate party engaged in the particular telephone communication ..." *Id.*, 442 Pa. at 237, 275 A.2d at 29.

The Commonwealth appealed to this court and we reversed on the ground that as the coil was not attached to the telephone, there was no "interception" of the communications.[10] The Supreme Court in turn reversed our decision on the ground that the consent of both parties was required before any device for overhearing a conversation might be utilized.

10. *Commonwealth v. McCoy*, 216 Pa.Super. 436, 268 A.2d 176 (1970). (Hoffman, J. dissenting) rev. sub nom. *Commonwealth v. Papszycki*, supra.

Pertinent to the "societal interest" urged by the Commonwealth in the case before us, the Supreme Court said:

"The statute contains no exceptions even for interceptions by governmental authorities engaged in an attempt to apprehend a criminal. Hence the legislature has determined as a matter of state public policy that the right of any caller to the privacy of his conversation is of greater societal value than the interest served by permitting eavesdropping or wiretapping. Such a determination, when within constitutional limits is solely within the discretion of the legislature." *Id.,* 442 Pa. at 239, 275 A.2d at 30, 31.

and

"Since the legislature is this statute clearly elevated individual privacy over any contribution to the social good that would be obtained by permitting wiretapping and monitoring of private conversation without the consent of both parties, and in light of *Murray*, it follows that the Suppression Hearing Court was entirely correct when it ruled that no evidence concerning the contents of appellant's telephone conversations can be admitted except by testimony of those with whom appellant spoke directly." *Id.,* 442 Pa. at 241, 275 A.2d at 31, 32.

Reduced to the simplest language, in *Papszycki*, the Supreme Court did not permit a witness in a criminal case who "tapped" his own telephone to testify to another's conversation with him if the witness heard that conversation, not through the receiver of the telephone, as a party engaged in the conversation, but as a listener by means of an amplification device.

If any doubt remains as to the validity of the Commonwealth's "societal interest" argument, it must surely vanish in the face of the truism stated by Justice Roberts for himself and Justice O'Brien, concurring in *Commonwealth v. Murray,* supra:

"A jealous regard for individual privacy is a judicial tradition of distinguished origin, buttressed in many areas by the imperative mandate of constitutional guarantees. Protection of individual privacy, however appears fre-

quently to reduce the methods available to law enforcement agencies in the detection and prosecution of crime. Few would deny that in this country today concern with the growth of criminal activity is of the same order of magnitude as the concern with the erosion of individual privacy . . ."

"In evaluating these considerations, one is confronted first with the simple, salient fact that by enacting the Act of July 16, 1957, our Legislature in language nowhere conditioned by an expressed exception for use by any agency, police or otherwise, proscribed interception of telephone conversations without permission of the parties. By so doing, no one denies the Legislature decided the right of any caller to the privacy of his phone conversation was more important than the interest served by permitting police or anyone else to tap wires." *Id.*, 423 Pa. at 57–58, 223 A.2d at 112–13.

The Commonwealth finally argues that Section 5703, prohibiting the admissibility of evidence obtained as a result of a violation of Section 5702 is an "exclusionary rule", the same as or at least similar to the exclusionary rule enunciated in *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). As the purpose of an exclusionary rule is to deter illegal police conduct, the argument continues, and Mr. Thompson was a private citizen, acting as such, the evidence should be admissible notwithstanding Mr. Thompson's violation of Section 5702.[11] The argument is sophistical as it completely overlooks the plain language of Section 5703. That section in words that could in no wise be more direct and unequivocal provides that no evidence obtained as the result of a violation of Section 5702 shall be admitted in *any* legal proceeding, and we may not alter that plain language. Section 5703 does not say that only evidence obtained as the result of a governmental invasion of

---

11. It is of course well settled that a search by a private individual is not subject to Fourth Amendment restraints. *Burdeau v. McDowell*, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921); *Commonwealth v. Eshelman*, 236 Pa.Super. 223, 345 A.2d 286 (1975); *Commonwealth v. Dingfelt*, 227 Pa.Super. 380, 323 A.2d 145 (1974).

the privacy protected by Section 5702 shall not be admitted. Indeed, as Appellees suggest, Section 5701 defines "Person" as including persons acting or purporting to act for, or in behalf of any government or subdivision thereof. If the legislature had intended Section 5703, or any other section of the statute, to apply to governmental officials only, it could have easily said so, and there would have been no reason to define the word "Person" as including such officials. Obviously, as structured, the statute and all of its subsections, including Section 5703, apply to and regulate the conduct of all persons, whether acting in a governmental, private or other capacity.

We must therefore decline the opportunity to interpret Section 5703 as coextensive with the Fourth Amendment or the exclusionary rule of *Weeks*, as to do so would offend our plain reading of the statute. We agree with the Commonwealth, however, that Section 5703 may indeed be considered to be an "exclusionary rule" in the semantic sense, as it excludes from any legal proceeding all evidence obtained as the result of a violation of Section 5702, no matter the status of the violator or the capacity in which such person acts.[12]

As we find that the evidence introduced and admitted at Appellees' joint trial was obtained as a result of a

12. In *Commonwealth v. Bennett*, 245 Pa.Super. 457, 369 A.2d 493 (1976), pet. for allowance of appeal den. 422 Pa. 1171 (1977), a New Jersey court, under a statute that permitted it to do so, authorized a police wiretap on a telephone located within that state, as incident to a drug investigation, initiated in large part on information supplied to New Jersey Police by the Pennsylvania State Police. The New Jersey wiretap revealed that calls were made to and received from the tapped New Jersey telephone by a defendant resident in Bucks County, Pennsylvania. This information was given to the Pennsylvania State Police by the New Jersey Police, and the Pennsylvania State Police obtained a search warrant in Pennsylvania and searched the defendant's house and automobile in Pennsylvania. The search revealed a quantity of marijuana and drug paraphernalia. We said that although such activity would have been illegal under 18 Pa.C.S. §§ 5701 et seq., the evidence obtained through a legal wiretap in a sister state could properly form the basis for a Pennsylvania search warrant.

violation of Section 5702 of the Crimes Code,[13] the lower court properly suppressed such evidence and granted Appellees a new trial.

Affirmed.

13. The Commonwealth has wisely not argued that the error in permitting the evidence to be admitted at trial, if error, was harmless. "Harmless error" is defined as one which could not have contributed to the verdict, and it will be recalled that an error can be harmless only if the Appellate Court is convinced beyond a reasonable doubt that the error is harmless. *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1973); *Commonwealth v. Poli*, 264 Pa.Super. 1, 398 A.2d 718 (1979). We are not convinced at all, let alone beyond a reasonable doubt, that the introduction of nearly 11 pounds of marijuana at Appellees' trial upon the charge of possessing that substance with the intent to deliver it did not contribute to the verdicts. Additionally, the burden of proving the error is harmless rests upon the Commonwealth. *Commonwealth v. Story*, supra 476 Pa. at 406, n. 11, 383 A.2d at 162, n. 11.