454 A.2d 60

**COMMONWEALTH of Pennsylvania**

v.

**Roger HAMMOND, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 18, 1982.

Filed Dec. 10, 1982.

Petition for Allowance of Appeal Denied April 14, 1983.

140

142

William T. Cannon, Philadelphia, for appellant.

Alan Sacks, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before JOHNSON, MONTEMURO and MONTGOMERY, JJ.

MONTGOMERY, Judge.

Appellant was convicted, by a jury, of voluntary manslaughter and possession of an instrument of crime. Following the denial of his post verdict motions, appellant was sentenced to consecutive terms of imprisonment of five (5) to ten (10) years for voluntary manslaughter, and two and one-half (2½) to five (5) years for possession of an instrument of crime. This appeal raising several assignments of error followed.

■ Appellant first alleges that evidence resulting from an "intercepted communication" was improperly introduced and admitted. During the trial the victim's sister testified that approximately six (6) days prior to the shooting of the decedent, appellant called the decedent, his estranged wife, at her mother's home. Ms. Sturdevant, the victim's sister, further testified that she listened to the conversation on an extension telephone without the consent of her sister or appellant. She heard appellant tell his wife that he had intended to kill her when he saw her with William Dowdy, her boyfriend, a few days prior to the telephone conversation. A timely objection to this testimony was made by defense counsel, but overruled by the trial court. The objection, and appellant's present claim, was based upon the Wiretapping and Electronic Surveillance Act [1] (hereinafter "the Act").

Counsel argued then, as he does now, that Ms. Sturdevant violated the Act by listening in on the conversation without the consent of the parties. As a result, he asserts

1. Act of 1978, October 4, P.L. 831, No. 164, § 2, effective in 60 days, 18 Pa.C.S.A. §§ 5701–5726.

that the evidence should not have been admitted. In presenting his argument, appellant relies on this court's opinion in *Commonwealth v. Baldwin*, 282 Pa.Super. 82, 422 A.2d 838 (1980). We are not, however, persuaded by appellant's position.

*Baldwin* interpreted the Pennsylvania Anti-Wiretap Statute [2] as prohibiting listening in on or overhearing a telephone conversation via a telephone extension without the consent of the conversors. This conclusion was reached by the court after they determined that such actions constituted an "interception" of the conversation. Notably, however, this court was interpreting the Act of 1972, which was applicable to the issue in *Baldwin* as the present Act became effective after the incident at issue therein occurred.

The Act of 1972 at 18 Pa.C.S.A. § 5702 stated that: "A person commits a misdemeanor of the second degree if he:

(1) intercepts without permission of the parties to the communication a message or other communication by telephone or telegraph..."

The *Baldwin* decision was premised on the fact that based upon the definition given above, only two elements need be proven to establish a violation: (1) interception of a telephone communication, (2) without the permission of the parties. The Act of 1972 contained no further provisions or definitions which would exempt the behavior in *Baldwin* or in the instant case.

Section 5702 of the Act of 1978, which is applicable to the matter now before us, defines "intercept" as the

"[a]ural acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical or other device."

**2.** Act of 1972, December 6, P.L. No. 334, § 1, effective June 6, 1973, 18 Pa.C.S.A. §§ 5701–5705, as amended. Repealed by the Act of 1978, October 4, P.L. 831, No. 164, § 1, 18 Pa.C.S.A. §§ 5701 et seq.

Standing alone, this definition may be interpreted as including the act of eavesdropping on an extension. When read in conjunction with the definition of an "intercepting device", however, that possible interpretation is negated.

At 18 Pa.C.S.A. § 5702, an intercepting device is defined as

"[a]ny device or apparatus ... that can be used to intercept a wire or oral communication *other than:*

(1) *any telephone* or telegraph *instrument,* equipment or facility, or any component thereof, *furnished to the subscriber* or user by a communication common carrier in the ordinary course of its business, or *purchased by any person,* and being used by the subscriber, user, or person in the ordinary course of its business..." [Emphasis added]

This definition makes it clear that a telephone extension is not to be categorized as an intercepting device.

If a telephone is not an intercepting device under the present Act, it then follows that the use of the instrument in the manner employed by Ms. Sturdevant does not constitute an interception.

As the legislature obviously intended to exclude eavesdropping as a violation, we find no reason to rule contrary to that intent and the clear statutory language.[3] The testimony of Ms. Sturdevant was, therefore, properly admitted into evidence as it did not result from a violation of the Act of 1978.[4]

Appellant next asserts that the lower court erred in denying his motion to suppress his statement despite the Commonwealth's purported failure to establish that he was

3. Section 5705 of the 1972 Act specifically defined eavesdropping with electronic, mechanical or other devices as a crime. The repeal of the Act of 1972, and the promulgation of the Act of 1978 did not result in any statutory language regarding the offense of eavesdropping.

4. Section 5721 of the Act of 1978 clearly states that a motion to suppress may be made if, "[t]he communication was unlawfully intercepted ..." Based upon our finding of no unlawful interception, a motion to suppress was not in order; and, it therefore follows that the ruling that the evidence was admissible was proper.

informed of the charges against him, and the purported failure to give him his *Miranda* rights.

After being located by the police on the day of the shooting, appellant was taken to Northwest Detective Division. At that point in time, the police were not aware that the victim had died as a result of her wounds. Therefore, appellant was informed by Detective Hahn that he was being charged with simple and aggravated assault, recklessly endangering another person and weapons offenses. Appellant was then given his *Miranda* warnings, during which the detective assigned to the investigation, Detective Kennedy, was called from the room to receive a telephone call. The caller informed Detective Kennedy that the victim had died. Kennedy returned to the room immediately following the completion of the warnings and informed appellant that the questioning concerned the shooting of Dorothy Hammond who had died as a result of the gunshot wounds.

When Kennedy asked appellant if he still desired to talk, appellant responded affirmatively and proceeded to give a one page statement admitting the shooting. Approximately ten minutes after the *Miranda* warnings were given, the interview was concluded.

At the request of homicide detectives, appellant was transferred to the Homicide Division at another physical location. Appellant was again questioned about the shooting, a scant one hour and forty-five minutes following the administration of the *Miranda* warnings, by Detective Kennedy with a homicide detective present as an observor. Appellant agreed to give a further statement. The interview, in which appellant explained how he had come to be at the deceased's home, lasted approximately ten minutes. No *Miranda* warnings were given during this interview.

In the first half of appellant's two-fold argument, he asserts that he was not informed that he would be charged with murder during the first interview. We do not agree. At the least, an implication of such a charge is present on the record due to the information concerning the victim's

death which was given to appellant by Detective Kennedy prior to questioning.

In *Commonwealth v. Dixon,* 475 Pa. 17, 379 A.2d 553 (1977), which is cited as support by appellant, two separate incidents which may have led to the questioning of Dixon existed. The Supreme Court found that Dixon's waiver of her *Miranda* rights was invalid as she misapprehended which of two offenses the police were investigating when she was questioned.[5] *Dixon* is not applicable to the matter before us as appellant was being questioned regarding one incident, not two separate transactions.

█ In order to validly waive his *Miranda* rights, a suspect must have an awareness of the general nature of the transaction giving rise to the investigation. *Commonwealth v. Richman,* 458 Pa. 167, 320 A.2d 351 (1974), *accord, Commonwealth v. Hart,* 266 Pa.Super. 190, 403 A.2d 608 (1979). Knowledge of the technicalities of the offense is not needed, but the suspect must have knowledge of the transaction. *Commonwealth v. Hart, supra.*

█ As appellant was given specific information as to the transaction he was being questioned about and the death of his wife, we find such knowledge to be sufficient to constitute a valid waiver.

The latter half of appellant's argument regarding this issue concerns the second statement he gave to the police after being moved to another physical location—the Homicide Division. Prior to the second interview, he was not given his *Miranda* rights.

█ *Miranda* warnings need not be given prior to each interview, but the totality of the circumstances must be considered to determine whether rewarnings are necessary. *Commonwealth v. Ferguson,* 444 Pa. 478, 282 A.2d 378 (1971); *Commonwealth v. Gray,* 473 Pa. 424, 374 A.2d 1285

5. The defendant in *Commonwealth v. Dixon,* 475 Pa. 17, 379 A.2d 553 (1977) initially thought that she was being questioned about her failure to make restitution as a result of a malicious mischief charge, when in fact she was being questioned about the murder of her son.

(1977). The totality of the circumstances includes the length of time between the warnings and the challenged interrogation, whether the interrogation was conducted at the same place where the warnings were given, whether the officer who gave the warnings also conducted the questioning, and whether the statements obtained are materially different from other statements that may have been made at the time of the warnings. *Commonwealth v. Ferguson, supra; Commonwealth v. Bennett,* 445 Pa. 8, 282 A.2d 276 (1971).

■ In the instant matter, the warnings occurred one hour and forty-five minutes prior to the challenged statements. Both statements given by appellant were substantially the same. In the first statement, appellant admitted to shooting his wife. The admission was again made during the second interrogation, and appellant supplied additional information as to specifics. Although one detective administered the *Miranda* warnings and another detective conducted the interrogation, the interrogator handled both interviews. Despite the change in locale, we find that the other circumstances—particularly the short period of elapsed time between the administration of the warnings and the second statement, and the consistency of the interrogator—render the admission of the second statement into evidence valid.

Appellant also alleges that the lower court erred in restricting his cross-examination of a Commonwealth witness, William Dowdy. During trial, Dowdy testified that he heard appellant tell the victim immediately before the shooting, "I told you I was going to kill you." Defense counsel attempted to impeach him with a pre-trial statement taken immediately after the crime which made no mention of appellant making such a statement.

■ The extent of cross-examination is within the discretion of the trial judge, who will not be reversed except for a clear abuse of discretion or an error of law. *Commonwealth v. Greene,* 469 Pa. 399, 366 A.2d 234 (1976);

*Commonwealth v. Rhem*, 283 Pa.Super. 565, 424 A.2d 1345 (1980). In determining the extent of cross-examination, the trial judge may consider whether the cross-examination would be likely to conflict or mislead the jury. *Commonwealth v. Lee*, 262 Pa.Super. 280, 396 A.2d 755 (1978).

■ During trial, defense counsel's attempt to impeach Dowdy was by way of implying an inconsistency in his testimony when in actuality there was none. We do not view an omission as one and the same as an inconsistency.[6] Thus, the trial court properly exercised its discretion by not allowing the proposed cross-examination.

Appellant next asserts that the lower court erred in allowing the prosecutor to display the victim's blood-stained clothing before the jury, and in admitting a, purportedly, highly inflammatory photograph into evidence. Specifically, appellant argues that the jacket worn by the victim at the time of the shooting was inflammatory due to bullet holes and old, dried blood stains in and on it. The jacket was used by a chemist testifying for the Commonwealth for reference. It was not examined by the jury. Instead, the witness used his own body to describe the entry of the bullets into the victim.

■ The record reveals that the victim was shot five times from a distance of less than twelve inches. As the witness merely used the jacket for reference while describing the entry of those five shots, we cannot find that this use was inflammatory. It is proper to employ clothing of a victim to illustrate oral testimony as to the nature and violence of an attack. *Commonwealth v. Nahodil*, 462 Pa. 301, 341 A.2d 91 (1975); *Cf., Commonwealth v. Oates*, 269

---

**6.** The following definitions as found in Webster's New International Dictionary of the English Language, Second Edition, Unabridged, lend ample support to this conclusion:

Omit: 1. To leave out or unmentioned; not to insert, include, or name.

Omission: *Act or instance of omitting.*

Inconsistent: 1. Not consistent; incompatible; incongruous; inharmonious; specifically, of propositions, ideas, beliefs, etc., so related that both (or all) cannot be true ...; as, inconsistent statements.

Pa.Super. 157, 409 A.2d 112 (1979); and, *Commonwealth v. Phillips,* 273 Pa.Super. 321, 417 A.2d 669 (1979).

As to the photograph which appellant claims was highly inflammatory, we find no evidence on the record to support that contention. The photograph was black and white and depicted the crime scene after the removal of the victim. A small stain was shown in the photograph, but had to be identified as blood by one of the police officers who originally arrived on the scene. The photograph was used as an aid in presenting the testimony of those officers and the eyewitness, Dowdy. It was also used during the cross-examination of appellant.

 The mere existence of blood in a black and white depiction of a crime scene does not render a photograph inflammatory. *Commonwealth v. Miller,* 268 Pa.Super. 123, 407 A.2d 860 (1979). The receipt of such a photograph is properly within the discretion of the trial court when it is not inflammatory and has significant probative value to show location and other specifics of the crime. *Commonwealth v. Oates, supra.* The trial court's admission of the photograph was, therefore, proper.

Finally, appellant contends that the lower court erred in permitting the prosecution to cross-examine his character witnesses concerning a prior conviction. The prior conviction was that of appellant. Approximately fourteen years prior to the trial in the instant case, appellant was convicted of attempted assault and served two years for that conviction. A string of character witnesses testified that appellant enjoyed a good or excellent reputation as a peaceful, law-abiding citizen. During cross-examination, each witness admitted to having no direct or indirect knowledge of appellant's prior conviction.

 The cross-examination of a character witness for the defense regarding the defendant's prior criminal record is not an abuse or discretion as the defense opens the door to such an inquiry by placing his reputation at issue in calling such witnesses. *Commonwealth v. Mayfield,* 262 Pa.Su-

per. 96, 396 A.2d 662 (1978) (Opinion in Support of Affirmance) [7]; *Commonwealth v. Hodge,* 270 Pa.Super. 232, 411 A.2d 503 (1979). Even with the adoption of this approach, concerns may arise when the impeachment tool is as remote in time as that at issue herein. *Commonwealth v. Mayfield, supra* (Opinion in Support of Reversal by Spaeth, J.)

The record evinces that those character witnesses who were questioned about the prior conviction knew appellant for, at the most, eleven years, and, at the least, three years.

This sole prior conviction occurred in the state of Virginia in 1966. All of the character witnesses testified to having met appellant subsequent to 1966. It is not unlikely that appellant reformed after serving two years, and subsequently enjoyed a reputation as a peaceful and law-abiding citizen as testified to by his witnesses. Under these circumstances, the remoteness of the conviction may outweigh its effectiveness as a tool of impeachment, and may have served only to prejudice appellant. *See, Commonwealth v. Mayfield, supra* (Opinion in Support of Reversal by Spaeth, J.)

■ Any error which may have been committed by the trial court in allowing this line of cross-examination, however, was harmless. Appellant, in testifying on his own behalf, admitted to shooting his wife. He was charged with and tried for, *inter alia,* murder, voluntary manslaughter and involuntary manslaughter. He asked the jury for a finding of voluntary manslaughter and received it. If the prejudice which may have attached from the impeachment process was as harmful as appellant maintains, a verdict of guilty of murder could have been returned. As a result, we find that any error which attached to the use of appellant's prior conviction to impeach his character witnesses was harmless.

Judgment of sentence affirmed.

7. An evenly divided court resulted in an affirmance in *Commonwealth v. Mayfield,* 262 Pa.Super. 96, 396 A.2d 662 (1978).