379 A.2d 553

**COMMONWEALTH of Pennsylvania**

v.

**Linda Joyce DIXON, Appellant.**

Supreme Court of Pennsylvania.

Argued Nov. 16, 1976.

Decided Oct. 28, 1977.

18

George W. Westervelt, Jr., George Royle, IV, John A. Hiscott, Stroudsburg, for appellant.

James F. Marsh, Stroudsburg, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

Appellant Linda Joyce Dixon, charged with the murder of her infant son Christopher, moved pre-trial to suppress an oral statement given by her to the police which admitted her guilt. The motion was denied. Thereafter appellant was convicted of murder in the second degree in a trial before a judge sitting without a jury. Post-verdict motions, which again challenged the admissibility of appellant's confession, were denied, and sentence of 6½ to 13 years imprisonment was imposed. This appeal followed. We shall reverse and direct a new trial.

20

■ The facts relevant to the motion to suppress are as follows.[1] On July 24, 1973, the decomposed body of a two year old child identified as that of Christopher Dixon was found in a wooded area in Stroud Township, Pennsylvania. The ensuing investigation by the police soon focused upon appellant, the child's mother. Shortly before 10:00 a. m. on August 14, 1973, three detectives (two state police officers and a Stroud Township policeman) called at the apartment of Rita Delessio, the person with whom Linda Dixon was then residing in Easton, Pennsylvania. Ms. Dixon was present and assented to the police request to accompany them to the Easton State Police Barracks. No reasons for this request were given. Linda Dixon informed Rita Delessio that no help would be necessary inasmuch as she, Linda, could handle the situation herself. The four then drove to the barracks in a police car, no conversation taking place between appellant and the three officers during the twenty minute ride.

Arriving at the Easton police barracks, appellant was placed in a small interrogation room. She was asked if she knew why the officers sought to question her and answered "yes." One of the policemen then read aloud from a prepared form the constitutional warnings required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Appellant was asked to repeat the words, to state whether she understood, and to sign the printed "waiver" form. She complied, and stated that she understood the warnings.

Before continuing this narrative, it is necessary to relate certain events which had taken place prior to this August 14 interview. Five months earlier, on March 14, 1973, appellant had been adjudged guilty of the crime of malicious mischief

1. In compliance with Pa.R.Crim.P. 323(i), the suppression court made findings of fact and conclusions of law with respect to the constitutional challenges to the defendant's statements. In such a case, the basis for appellate review is supplied by those findings of fact which are supported by the record; where there are "lacunae" among the findings, we consider the evidence of the prosecution plus evidence of the defense which, read in the context of the overall record, remains uncontradicted. See *Culombe v. Connecticut*, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961).

by a justice of the peace of Stroud Township.[2]  As a result, she was ordered to make restitution at the rate of $50 per month until a total of $500, the estimated amount of property damage, had been paid to the injured person.  Appellant was informed at that time by the justice of the peace that in the event she should default in making a required payment, a warrant would issue for her arrest; she was specifically told that the police would be dispatched to make the arrest. Nevertheless, Ms. Dixon failed to pay the first $50 installment falling due in late March, and each of the subsequent four installments owing for the period preceding August 14. In consequence, a warrant for Linda Dixon's arrest was delivered to the Stroud Township Police by the justice of the peace on July 26, 1973.  The policemen were in fact armed with this warrant at the time of their arrival at the Delessio apartment on August 14 and the interview with Dixon which followed at the police barracks.

Reverting to the events of August 14, 1973, interrogation commenced as soon as Linda Dixon had signed the *Miranda* waiver, but it did not pertain to the malicious mischief charge.  Appellant was shown a small black and white photograph of her deceased child, Christopher, taken at the age of ten months.  One of the police officers asked Ms. Dixon, "Where is Chrissy?", whereupon she broke into tears and wept for ten minutes.  At the end of this time appellant stated, "I did it."  The police then asked, "How did you do it?", and appellant related the details of the incident, seeking to explain her conduct as the desperate act of a mother no longer able to care for her child.

When the interview was brought to an end the police arrested appellant on the charge of malicious mischief and drove her to the Stroudsburg police headquarters.  She

2.  The conviction was based upon Section 916.1 of the Penal Code of 1939, Act of June 24, 1939, P.L. 872, § 916.1 (now superseded by Section 3304 of the Crimes Code, 18 Pa.C.S.A. § 3304).  The prosecution proved that appellant had done extensive damage to an apartment leased by her.  The damage having been in excess of $50, the Penal Code denominated the offense a misdemeanor for which conviction could result in a maximum sentence of a $300 fine or 12 months imprisonment, or both.  Section 916.1, *id.*

22

there refused to make a written statement, and at approximately 3:30 p. m. on the same day was preliminarily arraigned on a charge of murder.

Appellant's primary contention before us is that she did not "knowingly and intelligently" waive her constitutional rights to remain silent and to have a lawyer present during the police interrogation,[3] and that it was therefore error to refuse her request to suppress her oral confession. On the basis of this record, we must agree.[4]

In *Commonwealth v. Richman*, 458 Pa. 167, 320 A.2d 351 (1974), this Court held that a valid waiver of *Miranda* rights requires that the suspect have an awareness of the general nature of the transaction giving rise to the investigation.[5] The rationale of this holding was that it is only when such knowledge is possessed by a suspect that he can be said to understand the consequences of yielding the right to counsel.[6] "It is a far different thing to forego a lawyer where a traffic offense is involved than to waive counsel where first degree murder is at stake." *Commonwealth v. Collins*, 436 Pa. 114, 121, 259 A.2d 160, 163 (1969) (plurality opinion). It is clear from *Richman*, however, that the suspect need not have knowledge of the "technicalities" of the

3. "If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *Miranda v. Arizona*, 384 U.S. 436, 475, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694, 724 (1966).

4. Because of our disposition of the case on this issue, we do not reach the additional arguments appellant makes in support of suppression of the statement.

5. Mr. Justice, now Chief Justice, Eagen and the present writer separately concurred in *Richman*, but on grounds not here pertinent. See respectively, 458 Pa. at 176–83, 320 A.2d at 358–61, and 458 Pa. at 183–88, 320 A.2d at 355–58.

6. *Richman* itself was concerned with waiver of right to counsel at a post-arrest line-up, see *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), but the opinion stated that the same conclusions would also be applicable to a waiver of counsel obtained pursuant to the mandates of *Miranda*. 458 Pa. at 175, 320 A.2d at 355.

criminal offense involved; rather, it is necessary only that he be aware of the "transaction" involved. *Commonwealth v. Richman*, 458 Pa. at 175, 320 A.2d at 355; see also *Commonwealth v. Jones*, 460 Pa. 223, 331 A.2d 658 (1975); *Commonwealth v. McKinney*, 453 Pa. 10, 306 A.2d 305 (1973); *Commonwealth v. McIntyre*, 451 Pa. 42, 301 A.2d 832 (1973); *Commonwealth v. Boykin*, 450 Pa. 25, 298 A.2d 258 (1972); *Commonwealth v. Swint*, 450 Pa. 54, 296 A.2d 777 (1972). Neither does the *Richman* holding establish a "fifth *Miranda* warning"; that is, there is no prophylactic requirement that the interrogating officers affirmatively provide information to the suspect as to the crime under investigation. *Commonwealth v. Jacobs*, 445 Pa. 364, 284 A.2d 717 (1971); *Commonwealth v. Cooper*, 444 Pa. 122, 297 A.2d 108 (1971), both cited in *Richman*. Where, however, the defendant has not been furnished with such information and a pre-trial challenge concerning the validity of a confession is made on this ground, the Commonwealth must prove by a preponderance of the evidence that the defendant knew of the occasion for the interrogation. Cf. *Miranda v. Arizona, supra*, 384 U.S. at 475, 86 S.Ct. 1602, 16 L.Ed.2d at 724. This burden may sometimes be satisfied by the establishment of circumstances attending the interrogation, such as the prior statements of the suspect, see *Commonwealth v. Cooper, supra*, or the fact that interrogation follows hard upon the criminal episode and there is no circumstance lending ambiguity to the direction and purpose of the questioning.

▇ Applying *Richman* to the facts of the case at bar, it is apparent that the Commonwealth failed to establish Linda Dixon's awareness at the time of her written "waiver" that the death of her son was to be the subject matter of the interrogation. Although appellant's answer of "Yes" to the officer's inquiry as to whether she knew why she was being questioned, coupled with other evidence in this case,[7] might

---

7. The suppression record discloses that it had been widely reported by local newspapers that the body of a young boy had been discovered by the authorities. The trial record shows, additionally, that Dixon gave false and evasive answers to inquiries of acquaintances regarding her son's whereabouts during the six week period prior to

normally have sufficed to show awareness of the nature of the investigation, an inference of such an understanding cannot stand in the face of the reasonable assumption on appellant's part that she was about to be interrogated with regard to a wholly different matter, namely, her default in making restitution for the malicious mischief conviction, a default which she had been expressly warned by a justice of the peace would result in her arrest. In view of the palpable ambiguity as to Linda Dixon's understanding of the situation, an ambiguity which went unclarified by appellant's interrogators, we are unable to conclude that she "knowingly and intelligently" relinquished the exercise of her constitutional rights. Accordingly, we hold that it was error not to suppress appellant's inculpatory statement.

The Commonwealth contends that because appellant's "waiver" of her *Miranda* rights was freely revocable, *see* 384 U.S. at 473–74, 86 S.Ct. 1602, 16 L.Ed.2d at 723, she did not truly waive these rights until she uttered an inculpatory statement.[8] According to the Commonwealth, therefore, the point of time to which a suppression court should look to determine whether a suspect was aware of the subject matter of the interrogation—the prerequisite under *Richman* to the finding of a knowing waiver—is not when the *Miranda* waiver card is signed, but the later time when a confessional utterance is made. See *Collins v. Brierly*, 492 F.2d 735 (3 Cir., 1974). Thus the Commonwealth argues that when Dixon made the fatal statement, "I did it", this constituted a valid waiver because at that time she knew that it was her child's death as to which she was to be questioned.

August 14. Whether this evidence, coupled with appellant's indication to the police that she understood why she was being questioned, would have been sufficient to establish her perception of the subject matter as to which the police intended to question her is something we need not decide, given the countervailing evidence in this case.

8. The written waiver form employed in this case explicitly informed the suspect that if she submitted to questioning, she could stop it at any time.

■■■ We decline to adopt this approach for the reason stated by Mr. Justice O'Brien in *Commonwealth v. Collins*, 436 Pa. 114, 121, 259 A.2d 160, 163–64 (1969) (plurality opinion): "Once an accused has signed the waiver stating that he is willing to give a statement, it is no longer efficacious that he then be told what he is being questioned about. *The compulsive force of the unintelligent waiver has already had its effect.*" (Emphasis supplied.) By this we do not mean to establish a *per se* rule that no post-waiver action taken by the police to inform the defendant of the transaction involved can ever be effective, see *Commonwealth v. Jones*, 460 Pa. 223, 331 A.2d 658 (1975) (subsequent advisement of crime in question permissible where accompanied by readministering of *Miranda* warnings); we do hold, however, that a valid waiver will not be found simply because a suspect lacked the presence of mind to halt the interrogation and assert his constitutional rights the moment he was asked a question that revealed the nature of the criminal episode under investigation. Nor is our view in the present case altered by the fact that the police waiver form signed by Dixon expressly advised the accused that she had the right to call a halt to the questioning. While inclusion of this provision is to be commended,[9] it does little by itself to mitigate the psychological *fait accompli* of the written waiver.

Judgment of sentence reversed and case remanded for a new trial.

JONES, former C. J., did not participate in the decision of this case.

NIX, J., filed a dissenting opinion.

NIX, Justice, dissenting.

In my judgment, the conclusion reached by the majority is the result of an over-reliance on the *sequence of events* surrounding the interrogation of the appellant. The ulti-

9. See *Commonwealth v. Alston*, 456 Pa. 128, 317 A.2d 241 (1974), in which we held that such a warning is not required.

mate effect of this over-reliance is the exaltation of form over substance. I therefore dissent.

In *Commonwealth v. Richman*, 458 Pa. 167, 320 A.2d 351 (1974), this Court stated that a valid waiver of *Miranda*[1] rights requires the suspect to have an awareness of the general nature of the subject matter giving rise to the interrogation. However, I do not believe that the *Richman* reasoning forces the result reached by the majority. My reading of the facts in the instant case leads me to conclude that appellant did have this awareness prior to her actual participation in the custodial interrogation process. The facts show that *after* appellant was advised of her *Miranda* rights and signed the waiver form and *before* she actually responded to custodial interrogation, the police *immediately* indicated that the questioning would pertain to her son's death.

A period of approximately ten minutes elapsed before appellant responded and immediately confessed.[2] Thus appellant was acutely aware of the subject of the interrogation before and at the time she confessed.

The signing of the waiver form only evidences a suspect's willingness to participate in the interrogation, however, the actual waiver occurs when the person begins to respond to the police inquiries. At the time appellant responded, she had been given *Miranda* warnings and knew the subject matter of the inquiry. The fact that the warnings preceded the explanation of the subject of the inquiry, under these facts, is of no moment. I would affirm the judgment.

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. The majority does not and this writer need not consider the emotional state of mind of appellant immediately prior to her confession. In any event, it is likely that appellant's emotional reaction would have been the same even if the police had prefaced the *Miranda* warnings by informing appellant that her son was the subject of the interrogation.