## Commonwealth v. Reaves

*Edward H. Jordon, Jr., Assistant District Attorney*, for Commonwealth.

*Larry A. Kalikow, Assistant Public Defender*, for defendant.

LIPSITT, *J.*, August 6, 1979—On December 19, 1978, Kauffman Cleaners, North Front Street, Steelton, Pa., was allegedly burglarized. The subsequent police investigation led to defendant, Anthony Ray Reaves, being considered a suspect and on December 22, 1978, he was questioned concerning the burglary by two officers of the Steelton Police Department at the Steelton Police Station. Because defendant was a juvenile, his mother was with him as an interested adult during the entire interrogation. In the course of the questioning, defendant made inculpatory statements tending to link him to the burglary. These statements defendant has moved to suppress contending his utterances were preceded by an involuntary waiver of the constitutional requirements prescribed by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602 (1966), and were not voluntarily given.

Prior to the actual interrogation, defendant was given the familiar Miranda warnings in various forms. Initially, the caveats were read to defendant and his mother from a card which contained, inter alia, the following language: ". . . anything you say can and will be used against you in a court of law. . . ." Shortly thereafter, another version of the Miranda admonitions was read to defendant. This

version captioned "Notification and Waiver of Rights" was signed by defendant's mother and informed defendant in pertinent part: ". . . you cannot be compelled to answer . . . any question asked of you. If you do answer such questions, the answers given by you can and will be used against you in a juvenile proceeding at some later date." After defendant and his mother were given an opportunity to confer by the police, defendant agreed to make a statement. The police then administered a third warning substantially similar to the first and began the interrogation.

On March 2, 1979, a juvenile petition was filed against defendant and following a hearing on March 8, 1979, the case was ordered transferred to the adult criminal division. On May 30, 1979, defendant submitted an omnibus pretrial motion seeking the suppression of evidence. An evidentiary hearing on the pretrial motion was held on July 2, 1979. At the hearing both defendant and his mother testified to the effect that they were unaware of the possibility of transfer to adult criminal court but instead believed the matter would be disposed of in juvenile court.

Under the provisions of the Juvenile Act, transfer is permissible after hearing with proper notice given where the child is 14 years old or older at the time of the alleged conduct, and the court finds:

"(i)  that there is a prima facie case that the child committed the delinquent act alleged[;] (ii) that the delinquent act would be considered a felony if committed by an adult; and (iii)  that there are reasonable grounds to believe all of the following: (A) That the child is not amenable to treatment, supervision or rehabilitation as a juvenile through available facilities. In determining this the court

may consider age, mental capacity, maturity, previous records and probation or institutional reports. (B) That the child is not committable to an institution for the mentally retarded or mentally ill. (C) That the interests of the community require that the child be placed under legal restraint or discipline or that the offense is one which would carry a sentence of more than three years if committed as an adult." 42 Pa.C.S.A. §6355(a).

Defendant argues that because neither he nor his mother were aware of the possibility of transfer to the criminal division, there was no knowing and intelligent waiver of his constitutional rights under the Miranda decision.

There is some dispute as to whether the examination by the police was custodial so as to require compliance with Miranda. But even assuming the interrogation was custodial, defendant is not entitled to the suppression of his statements since the Miranda warnings were properly given, and defendant knowingly, intelligently and voluntarily waived his rights under Miranda and made the admissions which he now seeks to suppress.

Defendant places great reliance on Com. v. Dixon, 475 Pa. 17, 379 A. 2d 553 (1977). In Dixon, a defendant successfully argued her Miranda rights were not waived because she misapprehended which of two offenses the police were investigating when she was questioned. The police officers asked if she knew the subject matter of the investigation. She replied in the affirmative but thought it concerned a failure to make restitution in connection with a malicious mischief charge when instead the questioning concerned a murder. Defendant urges that Dixon stands for the proposition that an accused must be aware of any consequences which

might flow from a waiver of his Miranda rights in order effectively to waive them. A perusal of the Dixon opinion reveals a more limited holding. The court there stated:

"In Commonwealth v. Richman, 458 Pa. 167, 320 A. 2d 351 (1974), this Court held that a valid waiver of Miranda rights requires that the suspect have an awareness of the general nature of the transaction giving rise to the investigation . . . it is only when such knowledge is possessed by a suspect that he can be said to understand the consequences of yielding the right to counsel . . . It is clear from Richman, however, that the suspect need not have knowledge of the 'technicalities' of the criminal offense involved; rather, it is necessary only that he be aware of the 'transaction' involved. . . ." 475 Pa. at 22.

It is clear in the instant case that defendant had full knowledge of the nature of the transaction the police were investigating and Dixon does not require more. A waiver of Miranda rights is not commensurate with a guilty plea, and it would indeed be unreasonable to require as a crucial element of an effective waiver that a suspect be aware of all possible contingencies and dispositions of a case.

Similarly, although Pennsylvania case law necessitates that a juvenile be permitted to consult with an informed and interested adult prior to an effectual waiver of rights, it has not been required that the adult be aware of all possible outcomes resulting from a waiver of rights. That an adult must be "informed" means the adult must be advised of and understand the rights possessed by the minor before being permitted to influence the minor's decision to waive those rights. See Com. v.

Starkes, 461 Pa. 178, 335 A. 2d 698 (1975). In Com. v. McCloud, 477 Pa. 204, 383 A. 2d 894 (1978), the court further stated that an informed adult should be aware ". . . of the consequences that might follow a waiver of Miranda rights." Id. at 206. These tenets must realistically be interpreted to contemplate an adult having reason to know a waiver of rights could result in the child's making an uncounselled, inculpatory statement which would be used against him in future proceedings. In the current situation, defendant's mother was given the opportunity to confer with him after being twice informed of his Miranda rights. It may be concluded that the mother qualifies as an informed and interested adult.

There is no case or statutory law in Pennsylvania which necessitates knowledge of the possibility of transfer for a juvenile's effective waiver of Miranda rights. The theory behind the rigid requirements of Miranda is to avoid improper police activity in investigative procedure. To assure police noncoercion, a uniform set of questions was established. But nowhere in Miranda is there a responsibility placed upon the police to advise of every eventuality.

It is true that cases such as Dixon, supra, may have a special aspect for consideration. In dealing with juveniles, jurisdictions outside of Pennsylvania have been divided in their opinions and as both the Commonwealth and defendant here have observed, the majority have adopted a "totality of circumstances" test.

Defendant says, although he had previous experience with juvenile court, he had never been involved in behavior which would have constituted

a crime if committed by an adult. He and his mother urge that they were misinformed and misled by the police, expecting the admission would only be used in a juvenile proceeding and thus the circumstances in their entirety should limit the statements to an adjudication in juvenile court. To the contrary, the Commonwealth maintains neither defendant nor his mother was so naive and nonconversant with the criminal process not to recognize the seriousness of a felony, and it is pointed out this defendant was seventeen at the time of the interrogation and had been previously found incorrigible and committed to several institutions within the juvenile system. And most pertinent, the Commonwealth notes two of the three Miranda cautions given by the police advised the defendant his statements would be used in a *court of law*.

If totality of circumstances is the test, when all of these factors are considered in the aggregate, defendant and his mother could reasonably have surmised the defendant was facing criminal prosecution for the burglary. The police plainly did nothing inappropriate. Indeed, in the totality of the surrounding facts and attendant conditions, the position taken by defendant in his present motion is more retrospective than plausible substance.

Finally, defendant argues his assertions were not voluntarily made because they were induced by some sort of promise by the police he would be tried in juvenile court. This promise is predicated by defendant on the implication in the warning which advised defendant his statements could be used in future juvenile proceedings. The police were here warning defendant of the possible consequences of his making a statement—they were making no

promises or representations of immunity. This is buttressed by the fact that in other Miranda warnings given defendant, the police used the more inclusive phrase "court of law." Clearly, defendant's statements were not induced by any promises of immunity or respite by the police.

In concert with the expressed views we enter the following

### ORDER

And now, August 6, 1979, the pretrial motion of defendant, Anthony Ray Reaves, for suppression of evidence is denied.