SCHWARTZ, Chief Judge.
The state appeals from the suppression of Williams’ tape-recorded and transcribed confession to the second-degree stabbing murder of Charles Leavy. The sole asserted basis for the ruling is that the police did not tell the defendant, and he was apparently not otherwise aware of the subject matter of their projected questioning when he formally executed the Miranda waiver form. Because Williams was fully informed in this regard by the time he actually gave the statement in question, we reverse.
The historical facts are not controverted. Two City of Miami homicide detectives went to Williams’ home[1] and asked him to accompany them to the station. Although they suspected him of the Leavy killing and wanted to question him about it, they misrepresented to the defendant and his mother that they wished to speak to him only about a “problem at his job a while back.” Williams then voluntarily[2] agreed to go with them to headquarters. After they arrived there, and still without telling him the real reason why, the detectives meticulously *968 read Williams his Miranda rights and secured a signed waiver. Again,[3] there is no doubt either that the rights — including the privilege to terminate questioning whenever desired — were completely and correctly explained or that the waiver was a fully consensual, and, in the broad sense which is pertinent here,[4] an intelligent one. As soon as the waiver form was signed, the officers told Williams what they were investigating and took a so-called pre-formal statement in which he admitted the crime.[5] He was then formally arrested for second-degree murder and only thereafter made the “formal” confession — which was essentially a reiteration of the “pre-formal” statement— now before us. Although we fully understand the distaste with which the trial judge viewed the investigating officers’ lack of candor, we cannot agree that the only even arguably meaningful aspect of their misconduct — their misinforming Williams of the nature of their confrontation before he signed the waiver form — can justify the suppression of a statement made after he had been disabused of any misapprehension.
Because a valid Miranda waiver must, of course, be made knowingly and intelligently, many cases have held or indicated that a defendant should be informed at least generally of the subject of the interrogation before any statements are given. United States v. McCrary, 643 F.2d 323 (5th Cir.1981); Schenk v. Ellsworth, 293 F.Supp. 26 (D.Mont.1968); State v. Goff, 289 S.E.2d 473 (W.Va.1982). Although we do not at all disagree with these decisions [6] or this propo *969 sition, it does not apply to this case. This is because, with the exception of Commonwealth v. Dixon, 475 Pa. 17, 379 A.2d 553 (1977), the defendant involved did not know what the police were after at any point, especially including the time he made the incriminating statements. Thus, in Schenk, which is often cited as the leading case for this point of view,[7] the defendant was never advised of the murder charges against him; so that the largely exculpatory statement he made in response to what he thought was an inquiry concerning his automobile may well have been actually induced by the authorities’ deception. In contrast, Williams not only knew the subject of the questioning, he had actually been arrested for the crime before he made the confession now in issue. Since it was then that the actual waiver of his basic Miranda right not to give a statement without a lawyer took place, there was no operative deceit at the only legally pertinent time and the previous deception must be viewed as legally immaterial. This analysis, which is strongly supported by the fact that Williams did not invoke his known right to stop the questioning even after he became well aware of just what was facing him, is the one adopted in Collins v. Brierly, 492 F.2d 735 (3rd Cir.1974) (en banc), cert. denied, 419 U.S. 877, 95 S.Ct. 140, 42 L.Ed.2d 116 (1974), with which we completely agree:
It is possible that in some situations the fact that the suspect was not aware of the offense under investigation would be of concern to the court in evaluating the totality of the circumstances to determine the voluntariness of a statement. This is quite different, however, from a holding that unless the information is included in the pre-interrogation litany, a confession is per se inadmissible.
We need not and do not decide this question, however, since our inquiry may be limited to the issue of whether the ‘waiver’ was ineffective because it was signed before the petitioner was advised of the nature of the crime with which the interrogation was concerned.
* * * * * *
[AJssuming, arguendo, only that Collins was not told about the reason he was to be questioned until after he had signed the document in police headquarters, we conclude nevertheless that the statement was admissible.
The ‘waiver’ which is referred to in the majority opinion in Miranda is explained in the dissent of Justice Harlan as being some type of affirmative statement of rejection of rights. As the Court points out, however, a suspect has the privilege at any time of refusing to answer questions or to continue without the presence of counsel, and hence, the ‘waiver’ has no enforceable effect whatsoever. It may be assumed that its main purpose is evi-dentiary, to establish with a minimum of difficulty and a maximum of certainty that the police gave the warnings and that the suspect had agreed — preliminarily — to answer questions. Most police organizations now require that a writing be used. To be precise, however, a ‘waiver’ in its usual sense does not occur until a witness actually answers a question. Only when he takes such an affirmative action does the waiver occur. Anything preceding that step is but a freely revocable statement of intent.
The signing of the ‘waiver’ therefore had no legally compulsive effect; there is no contention or evidence that the police represented it as such, nor anything in the record to establish that it was so understood by petitioner. The mere act of signing, therefore, was not crucial in the context in which it is urged in this case, [footnote omitted]
492 F.2d at 739. Accord State v. Carter, 296 N.C. 344, 250 S.E.2d 263 (1979); see Carter v. Garrison, 656 F.2d 68 (4th Cir.1981), cert. denied, 455 U.S. 952, 102 S.Ct. 1458, 71 L.Ed.2d 668 (1982); State v. Falby, *970 187 Conn. 6, 444 A.2d 213 (1982); contra, Commonwealth v. Dixon, supra.[8]
Since the only factor[9] relied upon below [10] to suppress the confession did not, for these reasons, justify that determination, the order under review is
Reversed.

. Which was located outside their jurisdiction.

. The trial judge specifically found to this effect and there consequently is and can be, see State v. Roberts, 415 So.2d 796 (Fla. 3d DCA 1982), no present Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979)-type attack on the confessions. See State v. Dodd, 396 So.2d 1205 (Fla. 3d DCA 1981), aff’d on other grounds, 419 So.2d 333 (Fla.1982); cf. State v. Delgado-Armenta, 429 So.2d 328 (Fla. 3d DCA 1983).

. See note 2, supra.

. United States v. Hall, 396 F.2d 841 (4th Cir.1968), cert. denied, 393 U.S. 918, 89 S.Ct. 248, 2 L.Ed.2d 205 (1968).

. These events were described as follows:
Q. When was the first time that you mentioned anything about the homicide of Charles Leavy?
A. After Mr. Williams was advised of his constitutional rights and after he waived them, I then told him what we were investigating.
Q. Did you then proceed to have a conversation with the defendant about the incident?
A. Yes, sir, I did.
Q. We are going to call that the pre-for-mal statement interview; okay? /
At any time during the pre-formal statement interview, did Howard Williams indicate to you that he no longer wanted to speak to you?
A. No, sir, he did not.
Q. Did he speak to you about the incident?
A. Yes, sir, he did.
Q. During that time, did you ever threaten him or did you ever observe anyone else threaten him in any way to continue, or so that he should continue talking to you against his will?
A No, sir, no one ever did.
Q. Did he ever give you any indication that he did not want to continue talking to you during that pre-formal interview?
A. No, sir, he did not.

Q. Do you know why he broke down and started crying? Strike that.
Do you know what immediately preceded his breaking down and crying?
A. Yes, sir, I did.
Q. What was that?
A. When I told him that the man had been stabbed died, had died at the time that the stabbing occurred.
Q. Did there come a time that the defendant was arrested for second degree murder in this case?
A. Yes, sir.
Q. At what time was that?
A. After the pre-interview. Of course, I left him when he started crying, which was at the end of the interview, and I came back into the interview room about ten minutes later. I informed Mr. Williams I was going to place him under arrest for second degree murder for the stabbing of Charles Leavy.
Q. Was that the first time you or anyone else had placed him under arrest?
A. Yes, sir.
I then asked for his permission to take a tape-recorded statement of basically what we had previously been over. He agreed to do it.
Q. Did he resist that suggestion on your part in any way whatsoever?
A. No, sir, he did not.
Q. Did you in fact take a taped statement of Mr. Williams?
A. Yes, sir, I did.

. Contrariwise, we do not approve the cases which suggest that it is not necessary that the defendant know the real reason for the interrogation at any stage of the process. E.g., State v. Allen, 111 Ariz. 546, 535 P.2d 3 (1975); James v. State, 230 Ga. 29, 195 S.E.2d 448 (1973); see Stevens v. State, 419 So.2d 1058 *969 (Fla.1982) (no duty to inform that crime punishable by death).

. See, e.g., Washington v. State, 287 Ala. 289, 251 So.2d 592 (1971).

.We endorse Justice Nix’s dissent in Dixon:
The facts show that after appellant was advised of her Miranda rights and signed the waiver form and before she actually responded to custodial interrogation, the police immediately indicated that the questioning would pertain to her son’s death.
A period of approximately ten minutes elapsed before appellant responded and immediately confessed. Thus appellant was acutely aware of the subject of the interrogation before and at the time she confessed.
The signing of the waiver form only evidences a suspect’s willingness to participate in the interrogation, however, the actual waiver occurs when the person begins to respond to the police inquiries. At the time appellant responded, she had been given Miranda warnings and knew the subject matter of the inquiry. The fact that the warnings preceded the explanation of the subject of the inquiry, under these facts, is of no moment. I would affirm the judgment, [e.o.]
379 A.2d at 558.

. Compare, e.g., State v. Goff, supra (ignorance of reason for questioning only one of several factors which together show absence of valid waiver of Miranda rights).

. We point out, as averted to in note 2, supra, that only the validity of the grounds relied upon in the trial court may be considered on this state appeal. State v. Barreiro, 432 So.2d 138, n. 2 (Fla. 3d DCA 1983).