J-A12023-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| WILLIAM KEVIN MCGRAW | : | |
| | : | |
| Appellant | : | No. 1795 WDA 2018 |

Appeal from the Judgment of Sentence Entered April 18, 2017
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):  CP-02-CR-0006500-2013

BEFORE:   KUNSELMAN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KING, J.:                          FILED MAY 12, 2020

Appellant, William Kevin McGraw, appeals nunc pro tunc from the judgment of sentence entered in the Allegheny County Court of Common Pleas, following his bench trial convictions for second-degree murder, robbery—serious bodily injury, robbery of a motor vehicle, and conspiracy to rob a motor vehicle.[1]  We affirm.

In its opinion, the trial court fully and correctly sets forth the relevant facts and most of the procedural history of this case.  Therefore, we have no need to restate them.  Procedurally, we add, that on November 29, 2016, Appellant filed a motion to suppress statements he made during a police

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2502(b), 3701(a)(1)(i), 3702(a), and 903, respectively.

interview. The court conducted suppression hearings on November 29, 2016, and December 12, 2016, and denied the motion on December 12, 2016. Additionally, after Appellant filed a timely notice of appeal nunc pro tunc, the court ordered Appellant on August 15, 2019, to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b); Appellant timely complied on September 3, 2019.

Appellant raises one issue for our review:

> DID THE [TRIAL] COURT ABUSE ITS DISCRETION IN DENYING THE MOTION TO SUPPRESS INSOFAR AS...APPELLANT'S WAIVER OF HIS MIRANDA[2] RIGHTS FOLLOWING HIS ARREST FOR POSSESSION OF A STOLEN VEHICLE WAS INVOLUNTARY, UNKNOWING, AND UNINTELLIGENT WHEN HE WAS NOT INFORMED OF THE NATURE OF THE CRIME UNDER INVESTIGATION BY THE INTERROGATING OFFICERS PRIOR TO EXECUTING THE WAIVER?

(Appellant's Brief at 4).

"Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." Commonwealth v. Williams, 941 A.2d 14, 26 (Pa.Super. 2008) (en banc) (internal citations omitted).

> [W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may

_____

[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

reverse only if the court erred in reaching its legal conclusions based upon the facts.

Id. at 27. The reviewing court's scope of review is limited to the evidentiary record of the pre-trial hearing on the suppression motion. In re L.J., 622 Pa. 126, 79 A.3d 1073 (2013). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." Commonwealth v. Luczki, 212 A.3d 530, 542 (Pa.Super. 2019) (quoting Commonwealth v. Clemens, 66 A.3d 373, 378 (Pa.Super. 2013)). If appellate review of the suppression court's decision "turns on allegations of legal error," then the trial court's legal conclusions are nonbinding on appeal and subject to plenary review. Commonwealth v. Smith, 164 A.3d 1255, 1257 (Pa.Super. 2017) (quoting Commonwealth v. Jones, 121 A.3d 524, 526-27 (Pa.Super. 2015), appeal denied, 635 Pa. 750, 135 A.3d 584 (2016)).

Generally, statements made during custodial interrogation are presumptively involuntary, unless the police first inform the accused of his Miranda rights. Commonwealth v. DiStefano, 782 A.2d 574, 579 (Pa.Super. 2001), appeal denied, 569 Pa. 716, 806 A.2d 858 (2002). "[T]he Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." Commonwealth v. Gaul, 590 Pa. 175, 180, 912 A.2d 252, 255 (2006), cert. denied, 552 U.S. 939, 128 S.Ct. 43, 169 L.Ed.2d 242 (2007).

The determination of whether a confession is voluntary is a

conclusion of law and, as such, is subject to plenary review. Moreover, the totality of the circumstances must be considered in evaluating the voluntariness of a confession. The determination of whether a defendant has validly waived his Miranda rights depends upon a two-prong analysis: (1) whether the waiver was voluntary, in the sense that defendant's choice was not the end result of governmental pressure, and (2) whether the waiver was knowing and intelligent, in the sense that it was made with full comprehension of both the nature of the right being abandoned and the consequence of that choice.

Commonwealth v. Mitchell, 588 Pa. 19, 53-54, 902 A.2d 430, 451 (2006), cert. denied, 549 U.S. 1169, 127 S.Ct. 1126, 166 L.Ed.2d 897 (2007). "Only if the totality of the circumstances surrounding the interrogation reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived." Commonwealth v. Cephas, 522 A.2d 63, 65 (Pa.Super. 1987), appeal denied, 516 Pa. 616, 531 A.2d 1118 (1987), cert. denied, 484 U.S. 981, 108 S.Ct. 495, 98 L.Ed.2d 494 (1987) (emphasis added).

The Commonwealth has the burden to prove "by a preponderance of the evidence that the waiver is voluntary, knowing, and intelligent." Id. When assessing voluntariness the court should look at the following factors: (1) the duration and means of the interrogation; (2) the physical and psychological state of the accused; (3) the conditions attendant to the detention; (4) the attitude of the interrogator; and (5) any and all other factors which could drain a person's ability to withstand suggestion and coercion. Commonwealth v. Nester, 551 Pa. 157, 164, 709 A.2d 879, 883 (1998).

Additionally:

> A waiver of Miranda rights is valid where the suspect is aware of the general nature of the transaction giving rise to the investigation. Commonwealth v. Dixon, 475 Pa. 17, 379 A.2d 553, 556 (1977). "[O]nly when such knowledge is possessed by a suspect…can [he] be said to understand the consequences of yielding the right to counsel." Id. This is because it is a far different thing to forgo a lawyer where a traffic offense is involved than to waive counsel where first-degree murder is at stake. When a defendant challenges the validity of his Miranda waiver on this basis, the Commonwealth must establish, by a preponderance of the evidence, that the defendant was aware of the reason for the interrogation. Dixon, 379 A.2d at 556. The Commonwealth can meet this burden through evidence of the circumstances surrounding the interrogation, such as "the fact that the interrogation follows hard upon the criminal episode and there is no circumstance lending ambiguity to the direction and purpose of the questioning." Id.

Commonwealth v. Johnson, 639 Pa. 196, 214–15, 160 A.3d 127, 138 (2017), cert. denied, ___ U.S. ___, 138 S.Ct. 508, 199 L.Ed.2d 393 (2017) (some internal quotation marks and citations omitted). The Dixon rule is narrow, such that the Commonwealth need prove only that the defendant was aware of the general nature of the incident that gave rise to the investigation. Commonwealth v. Green, 683 A.3d 659, 663-65 (Pa.Super. 1996), appeal denied, 547 Pa. 751, 692 A.2d 563 (1997) (collecting cases for this general proposition; holding defendant's Miranda waiver following his arrest for vehicle theft was knowing and intelligent although police did not specifically inform him they would ask him about victim's disappearance; defendant knew authorities sought from him information about theft, and theft

was directly related to his victim's murder). See also Commonwealth v. Gotto, 452 A.2d 803, 807 (Pa.Super. 1982) (providing suspect made valid Miranda waiver in interrogation concerning investigation of homicide by motor vehicle where police questioned suspect about auto accident but did not inform suspect victim died as result of accident).

Instantly, after a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Kevin G. Sasinoski, we conclude Appellant's issue merits no relief. The trial court opinion comprehensively discusses and properly disposes of the question presented. (See Trial Court Opinion, filed December 17, 2019, at 4-6) (finding: Appellant made knowing, intelligent, and voluntary waiver of his Miranda rights; prior to interview, Detectives Mayer and Zabelsky presented Appellant with waiver of Miranda rights form; detectives read form to Appellant, and Appellant signed form; at suppression hearing, Detective Mayer testified Appellant seemed to understand and comprehend rights form; record demonstrates that interview occurred only six days after robbery/murder; initially, detectives told Appellant they were interested in stolen motor vehicle, and subsequently told him car was involved in robbery/murder; through course of interview, police confronted Appellant with details of Victim's murder; police did not deceive Appellant as to purpose of interview, and Appellant was not confused and did not misapprehend why police were interviewing him). The record supports the trial court's rationale. See

Mitchell, *supra*; Williams, *supra*. Further, to the extent Appellant argues (i) the detectives did not state expressly at the outset of the interview that they sought to ask Appellant about Victim's murder and (ii) there is no evidence that Appellant knew when the interview began that Victim was dead, those complaints merit no relief. Before the interview began, Detectives Mayer and Zabelsky informed Appellant they planned to ask him about the missing motor vehicle. As Appellant and his cohort fatally shot Victim and stole her car in the same incident, any questions about the missing motor vehicle were directly related to the murder-robbery. See Green, *supra*; Gotto, *supra*. Also, the interview occurred merely six days after the robbery and murder. See Johnson, *supra*. Thus, the circumstances surrounding the interrogation demonstrate Appellant was aware of the general nature of the transaction about which the detectives sought to question him. See *id*. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/12/2020

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA

vs.

WILLIAM KEVIN MCGRAW,

Appellant

CRIMINAL DIVISION

CC201306500
1795 WDA 2018

**OPINION**

BY:

HON. KEVIN G. SASINOSKI
Room 507 – Courthouse
436 Grant Street
Pittsburgh, PA 15219

COPIES TO:

Suzanne M. Swan, Esq.
310 Grant Street
Suite 823
Pittsburgh, PA 15219

Michael Streily, Esq.
District Attorney's Office
4th Floor – Courthouse
Pittsburgh, PA 15219

2018 DEC 17 AM 11: 50
DEPT OF CRIMINAL DIVISION
ALLEGHENY COUNTY, PA

1

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA      CRIMINAL DIVISION

vs.      CC201306500
     1795 WDA 2018

WILLIAM KEVIN MCGRAW,
         Appellant

## OPINION

Sasinoski, J.

On June 12, 2013 the defendant, William McGraw was charged; along with co-defendant, Timothy Brock, with Criminal Homicide[1]; Robbery[2], Robbery of Motor Vehicle[3] and Conspiracy[4] at CC201306500 and 201306503 respectively.

A Motion to Suppress Statements was denied on December 12, 2016.

Defendants were found guilty of Second-Degree Murder, Robbery, Robbery of a Motor Vehicle and Conspiracy on January 5, 2017.

Defendant was sentenced on April 18, 2017 to life imprisonment and a consecutive term of 10 to 20 years on the Robbery count.

An Appeal to Superior Court was filed at 699 WDA 2017 and dismissed for failure to file a docketing statement on July 7, 2017.

On January 31, 2018, the trial court entered an order reinstating the defendant's direct appeal rights and granted leave to file post-sentence motions. Post Sentence Motions were filed and later denied on February 15, 2018 by the trial court.

On December 5, 2018, defendant was granted leave to file Notice of Appeal nunc pro tunc.

---

[1] 18 Pa. C.S. §2501
[2] 18 Pa. C.S. §3701(a)(1)
[3] 18 Pa. C.S. §3702
[4] 18 Pa. C.S. §903

2

A timely Notice of Appeal was filed with Superior Court on December 19, 2018 at

No. 1795 WDA 2018. In his 1925(b) Statement of Matters Complained of on Appeal the

defendant alleges the following error:

> 1.     The court erred in denying his Motion to Suppress, insofar as his waiver of *Miranda* following his warrantless arrest was involuntary, unknowing and unintelligent insofar as he was not informed of the nature of the crime under investigation from the interrogating officers. The interrogation occurred six days after the incident in question, and the direction and purpose of the interrogation was ambiguous. Mr. McGraw was told that the police wanted information regarding a stolen vehicle. He had no reason to believe that he was a suspect in a shooting that occurred a week earlier. Mr. McGraw was only 19 years old when he was interested by the detectives. He had very limited experience with the Criminal Justice System. No evidence was presented that he had ever been subjected to a custodial interrogation prior to this instance. For these reasons, the Commonwealth did not show, by a preponderance of the evidence that Mr. McGraw was aware of the subject matter of the interrogation, and that he voluntarily, knowingly and voluntarily waived his *Miranda* rights.

The relevant facts of the case were set forth in the trial court opinion which was

filed in co-defendant Brock's case at 719 WDA 2017 as follows:

> At trial, the Commonwealth, through Assistant District Attorney, Michael Sullivan, called numerous witnesses to testify. Officer Michael Catanzaro testified that he was dispatched to 313 South Trenton Avenue because someone heard a gunshot. (N. T. 1 pp. 9-10). He testified that when he arrived, there was a female in the street with severe trauma to her head. (N. T. 1 p. 10). Near the victim, in the street, was a white-colored shotgun body, which is the housing for the inside of the shotgun shell. (N. T. 1 p. 11). Catanzaro testified that the paramedics were unable to revive the victim, and she was pronounced dead at approximately 3 a.m. (N. T. 1 p. 12). The Commonwealth then called Demetrius Roach, who was 13 at the time of the incident and lived at 313 Trenton Avenue. (N. T. 1 p. 15). He testified that he heard a male voice say "oh shit," a gunshot sound, and a car speeding off. (N. T. 1 p. 16). His father called the paramedics. (N. T. 1 p. 18).
>
> Erika Brown testified that she was working for the jitney station in Swissvale and worked with Monica Proviano, the victim. (N. T. 1 pp. 22-23). She stated that a jitney was an unlicensed ride sharing program. (N. T. 1 p. 23). She testified that the victim was willing to take rides in areas

3

that other drivers were not willing to take, including Trenton Avenue. (N. T. 1 pp. 24-25). The victim was driving a white Chrysler that she had rented. (N. T. 1 p. 25). Abu Ibrahim testified that he operated the jitney station where the victim worked. (N. T. 1 p. 28). At 2:30 am, the victim signed out that she was going to pick up a passenger at 311 Trenton. (N. T. 1 p. 30). He also stated that if a driver did not want to take a call, they could pass it on to the next driver, or if no driver wanted to take the call, the caller would not be picked up by the jitney service. (N. T. 1 p. 32).

Lamaya Delarosa testified that he knew William McGraw because of prior juvenile placement. (N. T. 1 pp. 33-34). He testified that he, McGraw, Davonte Johnson, and [Brock] were together for several hours on April 9th. (N. T. 1 pp. 35-39). He testified that McGraw and [Brock] were talking about robbing someone. (N. T. 1 p. 39). He stated that McGraw said he wanted to shoot someone with the sawed-off shotgun that he had. (N. T. 1 pp. 40, 51). The shotgun had tape on the back and was "kind of messed up in the front." (N. T. 1 p. 41). McGraw and [Brock] used Delarosa's phone to call a jitney. (N. T. 1 p. 42). He testified that about 15 minutes after McGraw and [Brock] left, he and Johnson heard gunshots, but they brushed it off because they assumed it was somebody else. (N. T. 1 p. 44-45).

Officer Anthony Perry testified that in his capacity working for the homicide division, he was dispatched to 313 South Trenton Avenue in Wilkinsburg because a woman had been shot and killed. (N. T. 1 p. 62). He observed an African American woman with a gunshot wound to the face. (N. T. 1 p. 64). They located shotgun wadding, which is used to separate gun powder from the projectiles in a shotgun round; a BB or birdshot round, two earrings, and a broken pair of glasses. (N. T. 1 pp. 64-65). He determined that she was driving a 2013 gray Chrysler that she had rented from National Car Rental Company on April 1, 2013 with a North Carolina license plate, JBE-8070. They issued a "BOLO", be on the lookout alert for that vehicle. (N. T. 1 p. 72).

At the suppression hearing on November 29, 2016, Allegheny County Detective Daniel Mayer testified for the Commonwealth.

The defendant William McGraw was brought to county police headquarters on April 16, 2013. (N.T. p. 30)[5]

The defendant was presented with a County Police Rights Warning Form, which was read to him by both Detective Mayer and Detective Zabelsky, and defendant signed

4

the warning form. (N.T. p. 31) Detective Mayer testified that the defendant seemed to understand and comprehend the rights form, as well as other questions that were asked of him. (N.T. p. 33) The defendant answered without hesitation or apprehension.

Initially, the defendant as told that he was brought in to get information regarding a missing Chrysler 300 sedan. (N.T. p. 33) The defendant stated initially that he was picked up by another individual who was driving a Chrysler 300, they drove around for a while, and were looking for girls. (N.T. p. 34)

The detective then testified that "I confronted him and I explained to him that we had some additional information through the course of our investigation that the Chrysler 300 he was in – he spoke of being in with this other individual had been taken during a robbery/murder in Wilkinsburg. (N.T. p. 35)

The defendant, upon hearing this, became rather nervous. (N.T. p. 35)

The defendant was nodding his head and listening to Detective Zabelsky lay out some of the information he had obtained regarding the investigation. *Id*.

The defendant then blamed another individual, "Little Man" for possessing the shot gun used to "kill the jitney driver". (N.T. p. 37)

After giving the details of the plan to rob a jitney driver, the defendant admitted that he had a shot gun pointed at the victims' head and at some point it went off killing the victim.

The trial court was satisfied that defendant made a knowing, intelligent and voluntary waiver of his right to remain silent. The interview took place six days after the murder. He did not appear to be confused or acting involuntarily. The defendant was told, initially, that police were interested in the stolen Chrysler 300 and was

---

[5] N.T. refers to notes of Suppression Hearing Transcript dated November 29, 2016.

subsequently told by police, that the car was involved in a robbery/murder. (N.T. p. 35) Through the course of his interview, police confronted defendant with details of the murder of the jitney driver. The trial court found no deception on the part of police in the questioning of defendant, and there appeared to be no misapprehension or confusion on defendant's part about why he was being interviewed.

For these reasons, the judgment of sentence, should be affirmed.