J-A06007-20

2020 PA Super 141

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| WALLACE CARTER | |
| Appellee | No. 154 EDA 2019 |

Appeal from the Order Entered December 13, 2018
In the Court of Common Pleas of Montgomery County
Criminal Division at No: CP-46-CR-0004959-2017

BEFORE:  STABILE, J., KING, J., and STEVENS, P.J.E.[*]

OPINION BY STABILE, J.:                                    **FILED JUNE 16, 2020**

The Commonwealth appeals from the December 13, 2018 order entered in the Court of Common Pleas of Montgomery County granting the motion to suppress filed by Appellee, Wallace Carter ("Carter").  The Commonwealth claims trial court error for granting Carter's motion on grounds not raised in his motion to suppress or at his suppression hearing.  Finding merit in the Commonwealth's argument, we reverse and remand.

In conjunction with its December 13, 2018 order, the suppression court issued Findings of Fact and Conclusions of Law.  The Findings of Fact, supported by citation to the suppression hearing transcript, are summarized as follows:

_____

[*] Former Justice specially assigned to the Superior Court.

In the early morning hours of June 12, 2016, a shooting occurred in Norristown. Detective Charles Leeds ("Leeds") responded to the scene approximately ten minutes later. Leeds took on an investigative lead regarding the shooting.

At the scene, Leeds encountered Carter, who was suffering from a gunshot wound—an entry wound to the lower-left abdomen and an exit wound in his back. Carter was under the influence of PCP, crack, and alcohol, and was visibly intoxicated.

Carter was transported to Penn Presbyterian Medical Center in Philadelphia where he underwent surgery. Leeds was in contact with hospital personnel who kept Leeds informed of Carter's condition and progress. During the daytime hours of June 14, 2016, after receiving information that Carter was conscious and alert, Leeds and Corporal Nicholas Dumas ("Dumas") traveled to the hospital. They spoke with hospital personnel before entering Carter's room in the ICU where Carter was sleeping and was hooked up to numerous medical devices. Upon their entry to his room, Carter awoke. He "was under the influence of some kind of pain medication" at the time.

Leeds and Dumas were wearing detective uniforms identifying them as Norristown Police Detectives. Their badges were displayed and both had their service weapons openly and visibly holstered on their hips.

Leeds and Dumas positioned themselves on either side of Carter's bed. Leeds, who deemed Carter "alert and conscious," began to speak with Carter

- 2 -

and asked if Carter knew who Leeds was. Carter responded, "Yeah, Leeds." Leeds then asked if Carter knew why he was in the hospital. Carter said he was in the hospital because he had been shot.

Leeds then read Carter his *Miranda*[1] rights. Leeds ordinarily has interrogation subjects sign a *Miranda* waiver when they agree to waive their rights but did not do so in this instance because Carter was connected to numerous medical devices. Instead, Leeds opted to secure only Carter's verbal confirmation and waiver of his *Miranda* rights. Carter stated he understood his *Miranda* rights and he was willing to speak with Leeds.

Leeds then began to question Carter and Carter answered Leeds' questions, giving appropriate responses. The conversation was described as cordial and calm and Carter appeared clearheaded as he gave concise responses that made sense. During the conversation, neither Leeds nor Dumas raised his voice, unholstered or brandished a firearm, physically touched Carter, or made any threats or promises to Carter. At no point, did Leeds or Dumas discuss how charges against Carter would proceed. It was stipulated that the encounter in Carter's hospital room was a custodial interrogation. *See* Findings of Fact, 12/13/18, at ¶¶ 1-26.

The interrogation yielded a confession from Carter. In his brief, Carter contends he was the victim of the June 12, 2016 shooting. Appellee's Brief at

_____

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

1 (citing Notes of Testimony, Suppression Hearing, 11/29/18, at 8-10, 22).

The Commonwealth contends,

> [Carter] pulled a gun on the victims, a struggle ensued, one of the victims wrestled the gun away from [Carter] and warned him to stay away. [Carter] then charged him and was shot. [Carter] was charged with two counts of simple assault, possession of a firearm with the intent to employ it criminally, recklessly endangering another person, terroristic threats, and person not to possess a firearm.

Commonwealth Brief at 4-5.

Carter filed a motion to suppress, styled "Motion to Suppress Statements Made While He Was Confined to a Hospital Bed and Extracted Absent a Knowing, Voluntary and Intelligent Waiver of his *Miranda* Rights." In his motion, he asserted his confession was obtained only "as a result of a custodial interrogation that occurred while [] Carter was medicated, connected to medical devices, confined to a hospital bed and questioned under circumstances in which he could not have knowingly, voluntarily and intelligently waived his *Miranda* rights." Motion to Suppress, 9/17/18, at 1. He claimed he was Mirandized moments after waking from sleep; he was medicated; and his body "was physically entwined with multiple medical devices," which prevented him from signing any written statement that might confirm he was able to understand the "alleged '*Miranda* warnings.'" *Id.* at 2, ¶¶ 9-13. He asserted that his "'physical and psychological state' while medicated and confined to a hospital bed during treatment for gunshot wounds necessarily suggests that he could not have knowingly, voluntarily

and intelligently waived his rights." ***Id.*** at 2, ¶ 14 (citing ***Commonwealth v. D'Amato***, 526 A.2d 300, 304-05 (Pa. 1987)). "Likewise, the 'condition of,' [] Carter's 'detention,' surrounded by two police officers while physically confined to bed by medical devices, suggests that he could not have knowingly, voluntarily and intelligently waived his rights." ***Id.*** at 3, ¶ 15 (citing ***D'Amato***).

The suppression court conducted a hearing on November 29, 2018, during which Carter argued, consistent with his motion, that the conditions under which his confession was given were such that "a person could not voluntarily, knowingly, intelligently surrender the rights that ***Miranda*** is designed to protect, when they say, yes, I'll agree to give a statement." Notes of Testimony, Suppression Hearing, 11/29/18, at 4.

At the conclusion of the hearing, the court took the matter under advisement. On December 13, 2018, the court issued the order granting Carter's motion. The court concluded that the encounter was a custodial interrogation requiring ***Miranda*** warnings and a valid waiver, and that Carter did not knowingly, intelligently, or voluntarily waive his ***Miranda*** rights. Conclusions of Law, 12/13/18, at 10, ¶¶ 1-2.

The Commonwealth filed this timely appeal under Pa.R.A.P. 311(d), which permits an appeal from the grant of a suppression order upon certification in the notice of appeal that the order "will terminate or

substantially handicap the prosecution."  The Commonwealth presents one issue for our review:

1. Whether the trial court erred by suppressing evidence based on a suppression theory [Carter] failed to raise in his pretrial motion or at the suppression hearing, and then compounded the error by denying the Commonwealth the opportunity to present evidence to address the waived constitutional claim raised *sua sponte* by the trial court?

Commonwealth Brief at 3.

In **Commonwealth v. Korn**, 139 A.3d 249 (Pa. Super. 2016), this Court explained:

> Our standard of review in addressing a challenge to the suppression court's granting of a suppression motion is well settled.
>
> > When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted.  The suppression court's findings of fact bind an appellate court if the record supports those findings.  The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.
>
> **Commonwealth v. Miller**, 56 A.3d 1276, 1278–1279 (Pa. Super. 2012) (citations omitted).  "Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain *de novo* review over the suppression court's legal conclusions."  **Commonwealth v. Brown**, 606 Pa. 198, 996 A.2d 473, 476 (2010) (citation omitted).

**Id.** at 252-53.

Prior to setting forth its Conclusions of Law, the court noted the Commonwealth's burden to "establish, by a preponderance of the evidence, that the defendant was aware of the reason for the interrogation." Findings of Fact and Conclusions of Law, 12/13/18, at 6 (quoting *Commonwealth v. (Marcel) Johnson*, 160 A.3d 127, 138 (Pa. 2017). The court noted that the "ultimate test of voluntariness is whether the confession is the product of an essentially free and unconstrained choice by its maker." *Id.* at 5 (quoting *Commonwealth v. (Christopher) Johnson*, 107 A.3d 52, 93 (Pa. 2014) (additional citations omitted)). The court discussed the need for a suspect's awareness of "the transaction giving rise to the investigation," *id.* (citing *Commonwealth v. Dixon*, 379 A.2d 553, 556 (Pa. 1977)), and that the interrogation be conducted under circumstances reflecting that "there is no circumstance lending ambiguity to the direction and purpose of the questioning." *Id.* at 6 (quoting *Johnson*, 160 A.3d at 138, in turn quoting *Dixon*, 379 A.2d at 556).

In *(Marcel) Johnson*, our Supreme Court explained:

A waiver of *Miranda* rights is valid where the suspect is aware of the general nature of the transaction giving rise to the investigation. *Commonwealth v. Dixon,* 475 Pa. 17, 379 A.2d 553, 556 (Pa. 1977). "[O]nly when such knowledge is possessed by a suspect . . . can [he] be said to understand the consequences of yielding the right to counsel." *Id.* This is because "[i]t is a far different thing to forgo a lawyer where a traffic offense is involved than to waive counsel where first degree murder is at stake." *Commonwealth v. Collins,* 436 Pa. 114, 259 A.2d 160, 163 (Pa. 1969). **When a defendant challenges the validity of his *Miranda* waiver on this basis**, the Commonwealth must establish, by a preponderance of the evidence, that the defendant

- 7 -

was aware of the reason for the interrogation. **Dixon**, 379 A.2d at 556.

**Johnson**, 160 A.3d at 138 (emphasis added).

Here, as reflected in his suppression motion and by the testimony at the hearing, Carter did not challenge the validity of his waiver based on a misunderstanding of "the general nature of the transaction giving rise to the investigation." **Id.** Nevertheless, the suppression court ignored the basis for the motion—that Carter's physical and psychological state was such that he could not knowingly, intelligently, and voluntarily waive his **Miranda** rights— and instead *sua sponte* determined that "under the circumstances, a 'palpable ambiguity' existed as to the reason for the interrogation; was [Carter] being questioned as a suspect or a victim[?]" Suppression Court Rule 1925(a) Opinion, 3/4/19, at 6 (citing Findings of Fact and Conclusions of Law, 12/13/18, at 5-10). According to the suppression court, the Commonwealth "was required to prove on a preponderance of the evidence that [Carter] knew of the occasion of the interrogation." **Id.** The court concluded that "[d]ue to the particular circumstances of [Carter's] hospitalization and the 'palpable ambiguity' concerning the detectives' presence in his hospital room (Were the police questioning [Carter] as a victim or a suspect?) this court found that the [Commonwealth] failed to meet its burden of proof." **Id.** at 6-7 (citing Findings of Fact and Conclusions of Law, 12/13/18, at 5-10).

The Commonwealth counters that Carter did not suggest, either in his motion or at the suppression hearing, that he was unaware of the reason the

detectives were in his hospital room. The motion and the testimony presented at the hearing related strictly to Carter's medical condition and his ability to waive make a knowing, intelligent, or voluntary waiver of his *Miranda* rights under those circumstances.

Our reading of the motion and the hearing transcript supports the Commonwealth's contention. Carter's suppression motion was clearly based on his medical circumstances as preventing him from properly waiving his *Miranda* rights. To suggest, as the suppression court does, that he was unaware why the officers were questioning him is wholly unsupported by the record. Moreover, it does not make sense. If the officers were there to speak with him as a victim, there would have been no reason to Mirandize him.

The suppression court extensively cites to, and relies upon, *Dixon*. However, *Dixon* is readily distinguishable. In that case, a woman who had been convicted of malicious mischief was informed she would be arrested if she did not make restitution. She failed to make restitution and was arrested. She was read her *Miranda* rights and was asked if she knew the reason for her arrest. She said she did. However, she mistakenly believed she was being arrested and questioned in relation to her failure to make restitution. The officers did not ask about the failure to make restitution. Instead, they questioned her about the death of her infant son. She immediately broke down and confessed to the murder. Our Supreme Court held that confession was not the result of a knowing and intelligent waiver of

her constitutional rights. Therefore, the confession should have been suppressed. The Court reversed her judgment of sentence for second-degree murder and ordered a new trial.

In contrast, Carter did not advance any argument in his motion or at the suppression hearing that he believed he was waiving his *Miranda* rights in conjunction with being the victim of a shooting. In fact, in his introductory remarks to the suppression court, Carter's counsel stated:

> I submit, Your Honor, you should shift the burden to the Commonwealth to present evidence that Mr. Carter's statement could not have been made in a knowing, voluntary and intelligent manner, specifically because it's agreed upon by the parties and within all the police reports and obtained in discovery that Mr. Carter's alleged confession occurred after a Miranda warning, yes, but a Miranda warning that was given two days after he had been shot with both entry and exit wounds and during the course of his treatment in the hospital, while he's sitting in a hospital bed intubated and drugged.
>
> The defense's argument, Your Honor, is that in those conditions, a person could not voluntarily, knowingly, intelligently surrender the rights that Miranda is designed to protect, when they say, yes, I'll agree to give a statement.

Notes of Testimony, Suppression Hearing, 11/29/18, at 3-4.

Carter did not call any witnesses at the suppression hearing. The only witness was Detective Leeds. No testimony was elicited from Detective Leeds even remotely suggesting that Carter did not understand the "direction and purpose of the questioning of the hearing." *See (Marcel) Johnson*, 160 A.3d at 138.

While we take no issue with the suppression court's Findings of Fact and recognize we are, therefore, bound by them, we conclude that the suppression court did not did not properly apply the law to the facts as established at the suppression hearing. Pennsylvania Rule of Criminal Procedure 581(D) requires that a motion to suppress "state specifically and with particularity the evidence sought to be suppressed, **the grounds for suppression**, and the facts and events in support thereof." Pa.R.Crim.P. 581(D) (emphasis added). Here, the suppression court erred by suppressing evidence on grounds not asserted in Carter's motion. ***Commonwealth v. Banks***, 165 A.3d 976, 980-81 (Pa. Super. 2017). Therefore, we reverse the suppression court's order granting Carter's motion to suppress and remand for further proceedings. In light of our disposition, there is no need to reconvene the hearing for additional evidence.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/16/2020

- 11 -